**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3503

_____

Kent Bernbeck; Stan Dobrovolny;      *
Richard Bellino; Angela L. Crouse;   *
Gwen Kutschkau,                      *
                                     *
          Appellees,                 *
                                     *
Betty Cowart,                        *
                                     *
          Plaintiff,                 *
                                     *
     v.                              *  Appeal from the United States
                                     *  District Court for the District of
Scott A. Moore,                      *  of Nebraska.
                                     *
          Appellant.                 *

_____

Submitted:  May 20, 1997
     Filed:  October 9, 1997

_____

Before McMILLIAN, ROSS and FAGG, Circuit Judges.

_____

ROSS, Circuit Judge.

     Appellees brought this 42 U.S.C. § 1983 action challenging portions of Nebraska statutory law which prohibit and criminalize the circulation of initiative petitions by persons who have not been registered to vote for one month prior to the circulation of the petitions.  See Neb. Rev. Stat. §§ 32-629, 32-630, 32-1404, 32-1546.  Appellees,

who are petition-drive organizers or circulators who did not meet the registration requirements, allege that the registration requirements violated their First Amendment right to free speech. The district court[1] concluded that the statutory provisions restrict appellees' core political speech and, because they are not narrowly tailored to serve the State's compelling interests, violate appellees' First Amendment rights. Secretary of State Moore appeals the court's decision with respect to the constitutionality of the voter-registration requirement. He does not appeal, however, the court's decision with respect to the thirty-day registration requirement. We affirm.

The Nebraska Constitution reserves for the people the power to propose laws and amendments to the constitution and to enact or reject the same at the polls by petition, independent of the legislature. Neb. Const. art. III, §§ 1, 2. While the provisions with respect to the initiative and referendum are self-executing, the constitution provides that "legislation may be enacted to facilitate their operation," Neb. Const. art. III, § 4, including "legislation to prevent fraud." <u>State ex rel. Stenberg v. Beerman</u>, 485 N.W.2d 151, 152 (Neb. 1992). The Nebraska Constitution does not impose residency or registration requirements on petition circulators. In 1995, legislation was enacted which required that circulators of initiative petitions had to be registered voters of Nebraska for one month prior to the circulation of any petitions. Neb. Rev. Stat. §§ 32-629, 32-1404. Section 32-630(3)(c) affirmatively prohibited any person from circulating a petition if he or she is not qualified as a petition circulator under § 32-629, while § 32-1546(1) makes it a Class I misdemeanor to circulate a petition if the circulator is not statutorily qualified to circulate the petition.

Petition circulators must sign an affidavit before a notary public on every sheet of the petition stating, among other things, that (a) he or she is a registered voter of the State of Nebraska; (b) the persons who signed the petition did so in the presence of the

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

circulator, and the date of the signatures is correctly stated on the petition; (c) the circulator believes the signer has written his or her name, street and number or voting precinct, and address correctly; (d) the circulator believes each signer was qualified to sign the petition, and (e) the circulator informed each signer of the purpose of the petition before the signer affixed his or her signature. <u>Id</u>. § 32-628(3). In addition, the petition must state whether the circulator has been paid or is a volunteer. <u>Id</u>. § 32-628(4).

Nebraska law further provides that election officials are "to determine if the circulator was a registered voter one month prior to the date of circulating and signing the petition," and if not, "[a]ll [such] signatures . . . shall not be counted." <u>Id</u>. § 32-1409(1), (3). Once the petitions have been submitted to the proper state authorities, the signatures on the petitions must go through an extensive verification process. In order to prevent fraud, election officials must determine, among other things, that each person who signed the petition was registered to vote before or at the time the petition had to be filed with the Secretary of State. <u>Id</u>. § 32-1409.

In <u>Meyer v. Grant</u>, 486 U.S. 414 (1988), the Supreme Court struck down as unconstitutional a Colorado statute that prohibited the payment of petition circulators because the law "abridged appellees' right to engage in political speech and therefore violated the First and Fourteenth Amendments to the Federal Constitution." <u>Id</u>. at 416. The Court reasoned that the circulation of a petition, which "involves both the expression of a desire for political change and a discussion of the merits of the proposed change," constitutes "core political speech." <u>Id</u>. at 421-22. For that reason, the Court concluded, the Colorado "statute trenches upon an area in which the importance of First Amendment protections is "at its zenith," and "the burden that Colorado must overcome to justify this criminal law is well-nigh insurmountable." <u>Id</u>. at 425.

-3-

We reject the Secretary of State's attempt to distinguish Meyer with the argument that the registered-voter requirement does not regulate "political speech," but rather the "process" of conducting an initiative election, thereby raising no First Amendment concerns. As in Meyer, the statutes at issue in the present case limit the ability of citizens to have initiative petitions circulated. The Meyer Court expressly concluded that "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" Id. at 421-22.

The concerns raised by the prohibition of paid circulators in Meyer are identical to the effect of the voter-registration requirement on the initiative process in the present case. In both instances, the laws "limit[ ] the number of voices who will convey appellees' message and the hours they can speak and, therefore, limit[ ] the size of the audience they can reach." Id. at 422-23. Moreover, the laws at issue in both Meyer and the present case "make[ ] it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." Id. at 423.

Here, the district court made the factual determination that the "evidence is undisputed that when petition organizers attempted to comply with the restrictions, the number of individuals they could hire to solicit signatures was grossly insufficient to the task, and this was true despite efforts to obtain 'qualified' circulators through mass mailing and advertisements." Bernbeck v. Moore, 936 F. Supp. 1543, 1561 (D. Neb. 1996). The evidence further showed that the Nebraska statutes made it less likely that the appellees, as sponsors of initiatives, would be able to collect the necessary number of signatures to place their initiatives on the ballot. The effect, therefore, of these statutes is a restriction of the people's constitutional right to express core political speech.

The strict or exacting scrutiny standard requires that a state must show the regulation in question is substantially related to a compelling government interest and is narrowly tailored to achieve that end.  Burson v. Freeman, 504 U.S. 191, 198 (1992).  Under this standard, the Secretary of State asserts that the registration requirement is necessary because it serves two compelling state interests:  (1) it prevents signature fraud by assuring the validity of the signatures of registered voters on the petitions and allowing election officials to track down petition circulators who have committed fraud; and (2) it maintains the integrity of the initiative process by "assur[ing] that the people participating in the process are indeed Nebraskans."

Secretary of State Moore testified that the voter-registration requirement serves the compelling state interest of preventing signature fraud in two ways.  First, it requires circulators to "establish residency in Nebraska, be aware of Nebraska laws and have concern about Nebraska laws." Second, it provides a record of those circulating petitions  that can be used to verify signatures on the petitions.  Appellees concede the State has a compelling interest in preventing fraud, but argue that the voter-registration requirement is not narrowly tailored to serve that end.

First, appellees note that other less restrictive provisions of Nebraska law are adequate to prevent signature fraud without imposing a voter-registration requirement.  For example, Nebraska already has a signature-by-signature verification process in which the election commissioner compares every signature on a petition with the corresponding signature on a voter-registration card, and also compares the printed name and address to the registration records.  Neb. Rev. Stat. § 32-1409. Nebraska law also makes it a misdemeanor for any person to fraudulently sign a petition, id. § 32-1546(1), and a felony to falsely swear to a circulator's affidavit or to accept or offer money in exchange for a signature on a petition.  Id. § 32-1546(2).  Further, each petition page must contain a warning regarding signature fraud and the penalty therefore, id. § 32-628(2), and every circulator must sign an affidavit under oath at the bottom of each sheet of a petition attesting that he or she witnessed each signature, that

-5-

the date of each signature is correct and that the circulator believes each signer was qualified to sign the petition.  <u>Id</u>. § 32-628(3).

These same devices for preventing signature fraud were found to be "adequate to the task of minimizing the risk of improper conduct in the circulation of a petition" in <u>Meyer</u>,  "especially since the risk of fraud or corruption, or the appearance thereof, is more remote at the petition stage of an initiative than at the time of balloting."  486 U.S. at 427. The State of Nebraska similarly has an adequate arsenal of  safeguards to protect against the danger of signature fraud, and accordingly, we conclude that  the requirement of voter registration is not narrowly tailored to serve the State's compelling interest.

The Secretary of State also contends the State has a compelling interest in maintaining the integrity of the initiative process, in other words, an interest in assuring that the process is reserved "for Nebraskans, people who live in Nebraska, make their livelihood here, will continue to live here."  <u>Bernbeck</u>,  936 F. Supp. at 1562.  Noting that the Nebraska Constitution gives the right to circulate petitions to the "people," without any limitation on whether they are registered to vote or residents of Nebraska, the district court disagreed that the State has a compelling interest in prohibiting non-registered voters from circulating petitions.

The district  court noted, however,  that even assuming that reserving the right to the initiative process to Nebraska residents was a compelling interest, the registration requirement for circulators was not narrowly tailored to satisfy that interest.  <u>Id</u>. at 1562.  The court stated that "the <u>specific</u> voter-registration requirement for circulators harms the very Nebraskans it is ostensibly designed to protect" by preventing Nebraskans from hiring non-registered voters, regardless of their residence, to  circulate their petitions.  <u>Id</u>. at 1563 (emphasis in original).  Finally, the district court noted that in no other situation does Nebraska law prohibit or restrict Nebraskans who advocate or oppose electoral measures from hiring or recruiting non-registered voters to

champion their cause, including hiring non-registered lobbyists, non-registered campaign workers or campaign managers, or non-registered persons to run a telephone bank opposing various initiatives. Id. We agree with the district court that even if the interests advanced by the State to support the registration requirement are compelling, the law is not narrowly tailored to achieve those interests.

Our decision comports with the Tenth Circuit's recent decision in American Constitutional Law Found., Inc. v. Meyer, 120 F.3d 1092 (10th Cir. 1997), where the court applied strict scrutiny to a Colorado law requiring petition circulators to be registered voters, Colo. Rev. Stat. § 1-40-112(1), and concluded that Colorado failed to identify a compelling state interest to which its registration requirement is narrowly tailored. Id. at 1100. The court noted that "[t]he mandatory exclusion of unregistered circulators also limits the number of voices to convey the proponent's message, limiting the audience the proponents can reach and making it less likely they will be able to gather the required number of signatures to place a measure on the ballot." Id.

In summary, we agree with the district court that the law requiring petition circulators to be registered voters in Nebraska violates the First Amendment because it restricts core political speech and the statutory requirement is not the least restrictive means available for satisfying Nebraska's interests in preventing signature fraud and maintaining the integrity of its initiative process. We have considered other issues raised by the appellant and find them to be without merit. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

    CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.