# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2724

_____

Jay Gary Wellwood, Individually and    *
as a Representative of Citizens for a    *
Better Pope County,    *
   *
         Appellant,    *
   *
       v.    *    Appeal from the United States
   *    District Court for the Eastern
Don Johnson, Clerk of Pope County,    *    District of Arkansas.
Arkansas, and State of Arkansas    *
ex rel. Winston Bryant, Attorney    *
General; Larry Newberry, John    *
Robert Hawkins, and Larry Kinslow;    *
and Gregg Long, Individually and    *
in His Capacity as Representative of    *
Citizens United to Protect Pope    *
County; Charles Colflesh, Individually    *
and in His Capacity as Representative    *
of Citizens United to Protect Pope    *
County; and Margaret Ragains,    *
Individually and in Her Capacity as    *
Representative of Citizens United    *
to Protect Pope County,    *
   *
         Appellees.    *

_____

Submitted: February 10, 1999

Filed: April 16, 1999

_____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

To put a local initiative on the ballot for most issues, Arkansas law requires the signatures of 15 percent of the registered voters in a political subdivision. Act 266 of 1985 raised this requirement to 30 percent for local-option elections (initiatives to decide whether to change a county from "wet" to "dry," or vice versa), and Act 243 of 1993 changed that requirement to 38 percent. See Ark. Code Ann. § 3-8-205(a). Jay Gary Wellwood, individually and as a representative of a group styling itself Citizens for a Better Pope County, sought a declaratory judgment that both statutes unconstitutionally deprived him and his organization of rights guaranteed under the Free Speech Clause of the First Amendment and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The district court[1] granted the defendants' motion to dismiss, holding that neither statute violates the Constitution. Mr. Wellwood appeals and we affirm.

I.

The defendants contend that the relevant statutes are constitutional because the Twenty-first Amendment's broad grant of power to the states to regulate alcohol authorizes them. As the district court correctly pointed out, however, the purpose of that amendment was to create an exception to the Commerce Clause and "[o]nce passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful." Craig v. Boren, 429 U.S. 190, 206 (1976). In fact, the Supreme Court has held that the Twenty-first Amendment does not empower the states to pass laws that would

_____

[1]The Honorable Susan Webber Wright, Chief United States District Judge for the Eastern District of Arkansas.

2–

otherwise violate the First Amendment, 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489, 516 (1996), or the Fourteenth Amendment, California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., 445 U.S. 97, 110, 114 (1980). Thus, the Twenty-first Amendment has no bearing on our consideration of the three constitutional challenges, which we now address in turn.

For his First Amendment claim, Mr. Wellwood relies primarily on a line of cases holding that the right to free speech is violated when the process of acquiring signatures for ballot petitions is interfered with in a way that restricts the expression of a particular political view. The most important of these cases, Meyer v. Grant, 486 U.S. 414, 416, 428 (1988), struck down a Colorado statute that made it an offense to pay petition circulators. The Court applied strict scrutiny to the statute, id. at 420, because it saw petition-circulating as "core political speech," id. at 422. Mr. Wellwood also calls our attention to Bernbeck v. Moore, 126 F.3d 1114, 1117 (8th Cir. 1997), in which we relied on Meyer in striking down a Nebraska statute that prohibited persons who were not registered voters from circulating petitions.

We believe that these cases are inapposite to the present situation. In Dobrovolny v. Moore, 126 F.3d 1111, 1112-13 (8th Cir. 1997), cert. denied, 118 S. Ct. 1188 (1998), we held that the principles laid out in Meyer did not invalidate a Nebraska constitutional provision that required initiative petitions to include signatures equal to 10 percent of the number of voters registered on the day that the petitions were to be submitted. Even though this provision made it impossible for the proponents of initiatives to know how many signatures were needed (and thus made it more difficult to get issues on the ballot), we held that the requirement did not violate the First Amendment because it did not infringe upon the "ability to circulate petitions or otherwise engage in political speech," id. at 1112. That is equally the case here. As the district court pointed out, the statutes involved in this case in no way burden the ability of supporters of local-option elections to make their views heard.

3–

Mr. Wellwood attempts to salvage his free speech claim by maintaining that the statutes illegally discriminate between those who want the "wet/dry" issue on the ballot and those who want other issues on the ballot. There is much case law concerning discrimination against a specific position on a particular issue, but very little with respect to discrimination against an issue itself, regardless of viewpoint. The closest that the cases come to recognizing this latter kind of discrimination as illegal is Hunter v. Erickson, 393 U.S. 385 (1969), an equal protection case.

In Hunter, 393 U.S. at 393, the Supreme Court struck down an amendment to the city of Akron's charter that singled out fair housing measures (those intended to end housing discrimination on the basis of "race, color, religion, national origin or ancestry," id. at 387) passed by the city council and subjected them to an automatic referendum requirement. The new requirement essentially created an extra step for the passage of such measures. Although that case appears somewhat similar to this one because a single issue was subjected to a special requirement, the Court, in holding that the provision violated equal protection, made it clear that that was only because the amendment had a discriminatory effect on minorities (since they were the ones who would suffer if fair housing measures were subject to an additional step before they could become effective). Id. at 391.

In Gordon v. Lance, 403 U.S. 1, 2, 7-8 (1971), a similar equal protection case, the Supreme Court upheld West Virginia laws requiring a 60 percent vote in a referendum to approve tax increases or to incur bond indebtedness. The Court distinguished Hunter, reasoning that it could "discern no independently identifiable group or category that favors bonded indebtedness over other forms of financing," id. at 5, and held that the challenged laws did not "violate the Equal Protection Clause or any other provision of the Constitution," id. at 8. Thus it does not appear that the type of discrimination that Mr. Wellwood points to is illegal absent an effect on an "independently identifiable group," id. at 5. There is no independently identifiable

group that favors or disfavors the sale of alcohol or supports the placement of the "wet/dry" issue on the ballot. Mr. Wellwood's First Amendment challenge therefore fails.

Mr. Wellwood next contends that the Arkansas statutes violate the Fourteenth Amendment's guarantee of equal protection by treating differently those who want the "wet/dry" issue on the ballot and those who want any other issue on the ballot. Mr. Wellwood's argument again relies on a discrimination between one issue and another, but, as we saw above, the Supreme Court has declined to recognize this form of discrimination as illegal. It has been recognized as illegal only when an independently identifiable class had an interest in the issue discriminated against, see Hunter, 393 U.S. at 391, and has been explicitly rejected in cases where, as here, no such group in fact had such an interest, Gordon, 403 U.S. at 5. Mr. Wellwood's equal protection claim therefore also fails.

## II.

Mr. Wellwood contends, finally, that the Arkansas statutes violate the Fourteenth Amendment's guarantee of substantive due process by preventing him from getting the "wet/dry" issue on the ballot. To violate substantive due process, governmental action must be " 'truly irrational,' that is, 'something more ... than ... arbitrary [and] capricious.' " Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993), cert. denied, 510 U.S. 1113 (1994), quoting Lemke v. Cass County, 846 F.2d 469, 472-73 (8th Cir. 1987) (en banc) (per curiam) (Richard S. Arnold, J., concurring). We do not believe that these statutes are "truly irrational." In fact, we believe that they are rationally related to legitimate state interests.

The defendants have posited four different objectives for the statutes in question: promoting temperance in counties that are already "dry," promoting stability in the distribution of alcoholic beverages, maintaining sources of revenue by making it more difficult to vote a "wet" county "dry," and avoiding election expenses

5–

absent substantial support for a vote on the issue. It is clear that the statutes in question are rationally related to each of these purposes: Temperance is promoted because people drink less in "dry" counties; frequent changes in the "wet/dry" status of counties create difficulty for the state's highly regulated distribution system; sellers of liquor will leave "wet" counties if they are voted "dry" or if their "wet/dry" status is subject to easy change; and an increase in the number of signatures required will decrease the number of elections and therefore save election expenses.

A statute that is rationally related to a legitimate state interest cannot also be "truly irrational." The Arkansas statutes in question thus do not violate the Fourteenth Amendment.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.