Steven T. KEAN, Randy H. Russell, Gene Saucier, W.L. Rayburn, Initiative and Referendum Institute, Inc., Americans for Sound Public Policy, Inc., and Mississippi Citizens for Legislative Term Limits, Inc., Plaintiffs,

v.

Eric CLARK, Secretary of State of Mississippi, Mike Moore, Attorney General of Mississippi, and the State of Mississippi, Defendants.

No. Civ.A.3:98–CV–516BN.

United States District Court, S.D. Mississippi, Jackson Division.

July 9, 1999.

Dale F. Schwindaman, Jr., Jackson, MS, for plaintiffs.

Geoffrey C. Morgan, Office of the Attorney General, Jackson, MS, for defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause of action is before the Court pursuant to the Motion of Plaintiffs for Summary Judgment and the Cross–Motion of Defendants for Summary Judgment.[1] The Court has considered the motions, briefs and accompanying exhibits. The Court rules that the Motion of Plaintiffs for Summary Judgment is hereby granted in part and denied in part. The Court further rules that the Cross–Motion of Defendants for Summary Judgment is hereby granted in part and denied in part.

## I. BACKGROUND

This cause of action focuses on the intersection of ballot initiatives and term limits, two timely and contentious issues involving government regulation of the political process in the United States generally and the State of Mississippi in particular. The Court must decide whether a recent amendment to the Constitution of the State of Mississippi pertaining to restrictions on the circulators of petitions for ballot initiatives violates the First Amendment of the United States Constitution. The decision of the Court will determine whether an initiative regarding the imposition of term limits on the Mississippi Legislature (the "Term Limits Initiative") will appear on the ballot in Mississippi at the time of statewide elections in November of 1999.

---

1. In conjunction with their Motion for Summary Judgment filed on October 30, 1998, Plaintiffs alternatively sought a preliminary injunction as to the placement of a proposed amendment to the Mississippi Constitution on the statewide ballot on November 3, 1998. The proposed amendment appeared on the ballot and was duly adopted by voters. The request for a preliminary injunction is therefore moot.

Plaintiffs in this cause of action are individuals and organizations who are proponents of the Term Limits Initiative. Defendants include Eric Clark, the Secretary of State of Mississippi, and Mike Moore, the Attorney General of Mississippi, in their official capacities and the State of Mississippi itself. By way of background, the Court will discuss (A) the adoption and regulation of ballot initiatives in Mississippi, (B) the pending Term Limits Initiative and (C) the challenged language of the Mississippi Constitution.

## A. Adoption and Regulation of Ballot Initiatives

Ballot initiatives are a form of direct democracy which allow ordinary citizens to place an issue before the electorate by way of a referendum.[2] In a 1992 statewide referendum, the voters of Mississippi adopted an amendment to the Mississippi Constitution of 1890 which provides for a ballot initiative process in the state. Miss. Const. art. 15, § 273. Section 273(1) provides that amendments to the Mississippi Constitution may be proposed directly by the Legislature or by an initiative of the people in cases where circulators gather a sufficient number of petition signatures. The Legislature is also authorized to "provide by law the manner in which initiative petitions shall be circulated, presented and certified," provided that it "shall in no way restrict or impair the provisions of this section or the powers herein reserved to the people." *Id.* § 273(12) and (13).

In 1996, the Legislature approved certain restrictions on the circulators of petitions for ballot initiatives. Among other restrictions, the Legislature passed Miss. Code Ann. § 23–17–17(2), which provided, in pertinent part, that "[o]nly a person who is a qualified elector of this state may circulate a petition or obtain signatures on a petition." Miss.Code Ann. § 23–17–17(2). A "qualified elector" was defined as a person who was "duly registered as an elector by an officer of the state under the laws thereof. . . ." *Id.* at § 23–15–11.

On August 28, 1997, the United States District Court for the Southern District of Mississippi, Tom S. Lee, Chief Judge, declared that Miss.Code Ann. Sections 23–17–17(2) and certain other restrictions on ballot initiatives[3] were unconstitutional because they violated free speech rights under the First and Fourteenth Amendments. *Term Limits Leadership Council, Inc. v. Clark,* 984 F.Supp. 470 (S.D.Miss. 1997) (Tom Lee, Chief Judge).

After the court struck down the "qualified elector" restriction, the Mississippi Legislature decided to impose an alternative type of restriction on petition circulators. During its 1998 session, the Legislature passed House Concurrent Resolution 61 ("H.C.R.61") providing for a statewide referendum to amend § 273(12) of the Mississippi Constitution (the "amendment").[4] The amendment proposed to

---

**2.** For historical background on ballot initiatives, *see, e.g.,* Hans A. Linde, Practicing Theory: The Forgotten Law of Initiative Lawmaking, 45 *UCLA L.Rev.* 1735 (1998); Thomas E. Cronin, The Paradoxes and Politics of Citizen Initiatives, 34 *Williamette L.Rev.* 733 (1998); John F. Cooper, The Citizen Initiative Petition to Amend State Constitutions: A Concept Whose Time Has Passed, or a Vigorous Component of Participatory Democracy at the State Level? 28 *N.M.L.Rev.* 227 (1998).

**3.** The Court also struck down a prohibition on per-signature payments to petition circulators, Miss.Code Ann. § 23–17–57(3), and a requirement that the Secretary of State must refuse to accept petitions with signatures obtained in violation of the qualified elector or per-signature requirements, Miss.Code Ann. § 23–17–23(c).

**4.** Miss. Const. art. 15, § 273(6) provides that a constitutional initiative "may be adopted by a majority vote of each house of the Legislature. If the initiative is adopted . . . the Secretary of State shall place the initiative on the ballot for the next statewide general election." Plaintiffs allege that the Legislature chose to place its proposed restriction on non-resident petition circulators on the statewide ballot as a constitutional amendment because an ordinary statute would likely have been vetoed by Governor Kirk Fordice, who is a known sympathizer of the term limits initiative. Defendants respond that Plaintiffs are engaging in mere peradventure as to political motivations.

prohibit persons who are not Mississippi residents from circulating petitions for ballot initiatives (the "circulator residency requirement"). The amendment was approved by voters on November 3, 1998, and pre-cleared by the United States Department of Justice by way of a letter to the Mississippi Attorney General dated November 9, 1998. The amendment took effect on November 30, 1998.[5]

## B. Term Limits Initiative

The Term Limits Initiative is intended to place before the voters of Mississippi the question of whether to enact an amendment to the Mississippi Constitution which would limit the terms of state legislators. The sponsor of the Initiative, Plaintiff Randy H. Russell, filed his petition with the Secretary of State on April 30, 1997. The ballot title and ballot summary for the initiative were proposed by the Office of the Mississippi Attorney General on May 12, 1997, and the Secretary of State sent the final text of the Initiative to Russell on May 16, 1997.

On June 9, 1997, Plaintiff Mississippi Citizens for Legislative Term Limits, Inc., entered into a contract with Progressive Campaigns, Inc. ("Progressive Campaigns") to secure signatures for the Term limits Initiative. Progressive Campaigns managed all aspects of the petition drive for the Term Limits Initiative. From July 15, 1997, through September 25, 1997, Progressive Campaigns gathered 95,000 petition signatures using only registered Mississippi voters as circulators, in compliance with Miss.Code Ann. § 23–17–17(2). Following the decision of the Court in *Term Limits Leadership Council*, entered on September 25, 1997, Progressive Campaigns began to use nonresident petition circulators, as well. Progressive Campaigns gathered a total of 63,000 signatures after September 25, 1997.

On May 12, 1998, Russell filed his petition for the Term Limits Initiative with the Office of the Mississippi Secretary of State. The petition included a total of 158,000 petition signatures endorsing the placement of the Initiative on the statewide ballot. The Secretary of State accepted and filed the term Limits Initiative, designating it as "Initiative No. 9." the Secretary of State confirmed that the petition included signatures in excess of the number required by § 273 of the Mississippi Constitution and satisfied the requirement that sponsors of a ballot initiative gather signatures of 12 percent of registered voters in each of the five Congressional districts in Mississippi. The Office of the Secretary of State sent Russell a letter dated June 9, 1998, confirming that the Term Limits Initiative had been accepted and filed in accordance with Miss. Code Ann. § 23–17–23 (1972).

Section 273(6) of the Mississippi Constitution provides that the Secretary of State "shall file with the Clerk of the House and the Secretary of the Senate the complete text of the certified initiative on the first day of the regular session." As a courtesy to Plaintiffs, the State consented by way of an Agreed Order signed by the parties to this cause of action and entered by the Court on December 11, 1998, for the Term Limits Initiative to be presented to the Legislature in spite of the amendment to § 273(12) ·of the Mississippi Constitution. The Secretary of State presented the Initiative to the Legislature during its 1999 session. The question of whether the Term Limits Initiative actually appears on the statewide ballot in November of 1999 turns an the outcome of this case.

## C. The Challenged Language

Prior to November 30, 1998, Section 273(12) the Mississippi Constitution read, in its entirety: "The Legislature shall provide by law the manner in which initiative

---

**5.** Miss. Const. art. 15, § 273(10) provides that "[a]n initiative approved by the electors shall take effect thirty (30) days from the date of the official declaration of the vote by the Secretary of State, unless the measure provides otherwise." .

petitions shall be circulated, presented and certified." The following amendment was added to § 273(12) by way of H.C.R. 61 and the referendum approved by the voters of Mississippi:

**To prevent signature fraud and to maintain the integrity of the initiative process the state has a compelling interest in insuring that no person shall circulate an initiative petition or obtain signatures on an initiative petition unless the person is a resident of this state at the time of circulation.** For the purposes of this subsection the term "resident" means a person who is domiciled in Mississippi as evidenced by an intent to maintain a principal dwelling place in Mississippi indefinitely and to return to Mississippi if temporarily absent, coupled with an act or acts consistent with that intent. Every person who circulates an initiative petition shall print and sign his name on each page of an initiative petition, or on a separate page attached to each page, certifying that he was a resident of this state at the time of circulating the petition. The Secretary of State shall refuse to accept for filing any page of an initiative petition upon which the signatures appearing thereon were obtained by a person who was not a resident of this state at the time of circulating the petition, and an initiative measure shall not be placed on the ballot if the Secretary of State determines that without such signatures the petition clearly bears an insufficient number of signatures. **The provisions of this subsection (12) shall be applicable to all initiative measures that have not been placed on the ballot at the time this proposed amendment is ratified by the electorate.**

Miss. Const. art. 15, § 273(12) (emphasis added). While Plaintiffs challenge the entire amendment to Section 273(12), the highlighted portions of the amendment are the focal points of this cause of action. The first highlighted sentence represents the circulator residency requirement. The language which is not highlighted sets forth the mechanics for applying the circulator residency requirement. The second highlighted sentence is a retroactivity provision which affects the application of the requirement to the Term Limits Initiative.

The retroactivity provision sentence targets the Term Limits Initiative in particular because it is the only initiative which was pending placement on the statewide ballot when the amendment was adopted by the Legislature and by voters. The effect of the provision is to invalidate the Term Limits Initiative retroactively for lack of sufficient petition signatures obtained by resident circulators. After September 25, 1997, Progressive Campaigns did not keep track of whether circulators were residents or non-residents. The circuit clerks in individual counties certified many signatures on petition pages which did not include the circulator's name or signature. Therefore, the final number of signatures gathered by resident and non-resident circulators cannot be ascertained from the petition presented to the Secretary of State.

The Court must now determine whether the circulator residency requirement and the retroactivity provision are constitutional. If the Court were to find that the circulator residency requirement is constitutional, it would need to examine the application of the retroactivity provision to the Term Limits Initiative in particular. If the Court were to find the circulator residency requirement is not constitutional, then the retroactivity provision and the entire amendment to § 273(12) are invalid because the other aspects of the amendment simply set forth mechanics for applying the circulator residency requirement.

## II. LEGAL STANDARD

The Court has before it cross-motions for summary judgment. According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment should be granted only if the record demonstrates that there is no genuine issue of material fact. The district court must not "resolve factual disputes by weighing conflicting evidence . . .

since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. DISCUSSION

At the outset, the Court finds that there is no genuine issue of material fact in this case. In its Response to Plaintiffs' Itemization of Undisputed Facts, the State only raises an issue as to three items. First, the State denies that none of the signatures gathered for the Term Limits Initiative were on petition pages wherein circulators certified that they were Mississippi residents. This does not represent a genuine issue of material fact because the parties agree that it would be impossible for Plaintiffs to demonstrate that they secured sufficient signatures by way of resident circulators alone.

The State also denies that the circulator residency requirement would dramatically reduce the available pool of circulators for ballot initiatives in Mississippi. The parties discuss this issue as part of their arguments regarding the constitutionality of the circulator residency requirement, and the Court examines it at greater length below. The State also mentions that it has no independent knowledge as to the role that Progressive Campaigns has played in petition circulation drives for ballot initiatives in other states, which also does not establish a genuine issue of material fact. The undisputed evidence before the Court is therefore sufficient for the Court to reach a judgment without proceeding to trial.[6]

**6.** Defendants have objected to the affidavit and deposition testimony of Angelo Paparella, the President of Progressive Campaigns, and to exhibits consisting of copies of newspaper articles. The Court has examined the docket and finds that it is not clear that Plaintiffs

failed to designate Paparella as an expert witness in the proper manner. The Court is well aware that the statements which concern the State amount to speculation. The State also objects to newspaper clippings submitted by Plaintiffs as evidence, arguing that the clip-

Because there is no genuine issue of material fact in this case, the Court must determine which party is entitled to summary judgment as a matter of law. The Court will examine in turn (A) the circulator residency requirement which is at heart of this case and (B) the retroactivity provision and its application to the Term Limits Initiative.

## A. Circulator Residency Requirement

The ultimate issue in this case is whether the requirement that petition circulators for ballot initiatives must be residents of the State of Mississippi is consistent with the First and Fourteenth Amendments of the United States Constitution.[7] The case before the Court turns on the scope of First Amendment right to freedom of speech. *Compare Biddulph v. Mortham*, 89 F.3d 1491, 1497 (11th Cir. 1996) (discussing freedom of speech and the Petition Clause). Ballot initiatives involve the rights of three different parties: sponsors of ballot initiatives, circulators of the initiative petitions and signatories to such petitions. Mississippi requires that the sponsors of an initiative and signatories to initiative petitions must be residents of the state. Those parties have a right to free speech and a right to petition the government under the Mississippi Constitution and the First Amendment. Non-resident circulators of initiative petitions have no right to petition the State of Mississippi because they are not citizens of the state, but they do have free speech rights. The issue at hand implicates the question of whether the circulator residency requirement encroaches directly on the free speech rights of petition circulators and indirectly on the free speech rights of the sponsors of ballot initiatives by restricting their ability to enlist non-resident circulators to advance a political message and agenda, much like a candidate for state office employs an out-of-state consultant or media producer to assist on a political campaign.[8]

The Court will discuss (1) certain preliminary issues raised by the parties, (2) applicable case precedence and (3) the constitutionality of the circulator residency requirement. It will then continue to a discussion of the retroactivity provision and its application to the Term Limits Initiative.

### 1. Preliminary Issues

The present case arises in a contentious political environment. Plaintiffs charge that the Mississippi · legislature voted to place the circulator residency requirement on the state ballot in November of 1998 in order to undermine the term limits initiative and preserve the possibility of incumbent reelection. The State, on the other hand, relies in part on the vague testimony of state legislators to depict the initiative

---

pings are mere hearsay. The clippings quote certain state legislators commenting on term limits. The Court finds that the objection of the State to the newspaper exhibits is well taken and the Court has not considered those clippings in reaching its decision.

7. The First Amendment to the United States Constitution provides as follows:
 Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
 U.S. Const. amend. I. The First Amendment applies to states by way of the Fourteenth Amendment, which provides:
 No State shall make or enforce any law which shall abridge the privileges or immu-

nities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.

8. In *Bernbeck v. Moore*, 126 F.3d 1114 (8th Cir.1997), the United States Court of Appeals for the Eighth Circuit pointed out that a Nebraska requirement that petition circulators be registered voters "harms the very Nebraskans it is ostensibly designed to protect" by preventing the resident sponsors of ballot initiatives from enlisting non-registered, non-resident as petition circulators. *Id.* at 1117.

process as a political tool manipulated by out of state circulators preying on innocent Mississippians. The parties to this case seem to have lost sight of the fact that the issue before the Court is not one of politics but of constitutional interpretation and application.[9] The result is that the parties have filed legal briefs filled with occasional hyperbole and a few red herrings. As a preliminary step, the Court will address certain of those unsuccessful arguments raised by the parties, including (a) collateral estoppel, (b) a potential conflict with the Mississippi Constitution and (c) federalism concerns.

### a. Collateral Estoppel

 Plaintiffs argue that collateral estoppel applies to the circulator residency restriction of amended § 273(12) based on the previous decision of the Court to overturn the "qualified elector" restriction of § 23–17–17(2). Collateral estoppel precludes a court from considering a legal issue decided by prior litigation. To apply the federal law of collateral estoppel, the Court must consider whether (i) the issue at stake is identical to the issue in prior litigation, (ii) the issue was a critical and necessary part of the judgment in the prior litigation, and (iii) special circumstances in the present case would render preclusion inappropriate or unfair. *McDuffie v. Estelle*, 935 F.2d 682 (5th Cir.1991). The Court finds that the question as to whether a circulator residency requirement is constitutional is distinct from the previous holding that a "qualified elector" restriction was unconstitutional. Accordingly, the Court declines to apply collateral estoppel in the case sub judice.

### b. State Constitutional Conflicts

 Plaintiffs also argue that the adoption of the amendment to Miss. Const. art. 15, § 273(12) is contrary to the Mississippi Constitution because it conflicts with § 273(13), which provides that "[t]he Legislature may enact laws to carry out the provisions of this section but shall in no way restrict or impair the provisions of this section or the powers herein reserved to the people." As the State points out, § 273(1) provides for amendments to the Constitution which are commenced by either the Legislature or the initiative process. The fact that the amendment in question relates to the ballot initiative process itself does not render it null and void. At best, it could be argued the Legislature has restricted the right of sponsors of ballot initiatives to utilize non-resident petition circulators. The Court finds that it would be illogical to conclude from § 273(13) that the people of Mississippi cannot amend the ballot initiative process which was established by a previous referendum. Accordingly, the Court finds that the amendment to § 273(12) is not expressly prohibited by § 273(13).

### c. Federalism Concerns

The State weaves arguments regarding federalism and state sovereignty throughout its defense of the circulator residency requirement. The State launches its primary memorandum brief by broadly asking: "Is the State of Mississippi barred from imposing any meaningful regulation of the initiative process under the First Amendment?" Memorandum Brief of Defendants, at 1. The State argues, *inter alia*, that "out-of-state interests are attempting to · influence in-state policies through the use of initiatives."[10] *Id.* at 5.

---

**9.** This cause of action implicates important questions of federalism and the democratic process, and highlights the degree to which "[t]he foundations of democracy are being thrown open for examination today as they have been at only a few previous moments in political history." Samuel Issacharoff, Pamela S. Karlan and Richard H. Pildes, *The Law of Democracy: The Legal Structure of the Political Process* v (1997) (cited by R. Hewitt

Pate, Destabilizing Democracy, 1 *Green Bag 2d* 331 (1998)). As with any justiciable political issue involving the intersection of constitutional rights and political realities, the Court proceeds with caution.

**10.** The testimony of Legislators is presented by the State to reinforce a distinction between Mississippi residents and outsiders. In one deposition, for example, Senator Johnnie

The State suggests that the adoption of the amendment to § 273(12) by the voters of Mississippi protects it from constitutional review, arguing: "This case is about self-governance." *Id.* at 22. The State also reminds the Court that its laws are presumptively constitutional. Id. at 25–26.

The Court acknowledges the pertinence of these federalism concerns as a general matter. Indeed, the Court notes that the Supreme Court recently released a celebrated trio of cases which buttress sovereign immunity under the Eleventh Amendment. *Alden v. Maine,* —— U.S. ——, 119 S.Ct. 2240, —— L.Ed.2d —— (1999) (holding that the powers delegated to Congress under Article I of the Constitution do not include the power to subject non-consenting States to private suits for damages in state courts); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* —— U.S. ——, 119 S.Ct. 2219, —— L.Ed.2d —— (1999) (holding that Florida's sovereign immunity was not validly abrogated by the Trademark Remedy Clarification Act which subjects States to suits brought under the Trademark Act of 1946 for false and misleading advertising); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank,* —— U.S. ——, 119 S.Ct. 2199, —— L.Ed.2d —— (1999) (holding that the abrogation of state sovereign immunity by the Patent and Plant Variety Protection Remedy Clarification Act is invalid because it cannot be sustained as legislation enacted to enforce the guarantees of the Due Process Clause of the Fourteenth Amendment).

These recent Supreme Court cases signal increased sympathy for federalism concerns. They specifically address the power of the United States Congress to pass legislation which violates the sovereignty of the states. However, they did nothing to carve back the supremacy of the federal constitution over the states. The Court noted in *Alden* that "in adopting the Fourteenth Amendment, the people required the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution. . . ." *Alden, supra,* at 731 (*citing Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). "The States and their officers are bound by obligations imposed by the Constitution and by federal statutes that comport with the constitutional design." *Id.*

■ The Supreme Court previously held that "it is irrelevant that [a] statutory restriction is based upon a constitutional provision enacted by petition. The voters may no more violate the United States Constitution by enacting a ballot issue than the general assembly may by enacting legislation." *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley, Cal.,* 454 U.S. 290, 102 S.Ct. 434, 436, 70 L.Ed.2d 492 (1981). Moreover, in *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), the Supreme Court specifically decided that the State was not relieved of its obligation to demonstrate that a restriction on ballot initiatives complied with the First Amendment simply because ballot initiatives were a state-created right. *Id.* at 1893–1894. If a state creates a ballot initiative procedure, it cannot then impose restrictions on that procedure which violate the Free Speech Clause of the First Amendment. *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 295 (6th Cir.1993).

The Court finds that the federalism concerns of the State of Mississippi do not eliminate the obvious requirement that the circulator residency requirement must comport with the United States Constitution. The Court must decide

Walls discusses the difference in dialects between Mississippians and non-residents. "[W]e generally know Mississippi accents, and we speak with a slower type presentation," said Walls. "[W]e generally can detect when a person is not a homegrown Mississippian." Deposition Transcript of Senator Johnnie Walls, at 33–34.

what is constitutional, not what is distasteful to democratic sensibilities. The Court will therefore proceed to an analysis of case precedence as to restrictions on the circulators of ballot initiative petitions.

### 2. Case Precedence as to Ballot Initiatives

This is an issue of first impression in the Fifth Circuit. The Court necessarily looks to case precedence for guidance in crafting a framework for analysis. In *Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425, the Supreme Court struck down a Colorado statute prohibiting payment for the circulation of petitions for ballot initiatives. *Meyer*, 108 S.Ct. at 1886. The Court held that the circulation of a petition pertaining to a ballot initiative "involves the type of interactive communication concerning political change that is appropriately described as 'core political speech,'" an area in which protection of First Amendment rights is "at its zenith." *Id.* at 1892, 1894 (citations omitted). Accordingly, the Court considered the burden on the State of Colorado to justify the statute to be "well-nigh insurmountable." *Id.* at 1894.

The State of Colorado argued that there were sufficient avenues for gaining signatures other than reliance on paid circulators; that it was free to impose restrictions on the initiative process because it is a state-created political right; that it had an interest in ensuring that an initiative has sufficient grass roots support to appear on the ballot; and that it was attempting to prevent fraud and protect the integrity of the initiative process. *Id.* at 1893–1894.

The Court rejected each of these arguments in turn. The Court determined that the State was not relieved of its obligation to demonstrate that the statute complied with the First Amendment simply because

more burdensome avenues of expression were available. *Id.* at 1893. The Court further found that the interest in ensuring grass roots support was already protected by the requirement that a certain number of signatures be obtained before an initiative is placed on the ballot. In addition, the Court found that existing statutes sufficiently protect the integrity of the initiative process. *Id.* at 1895–1895.

The United States District Court for the Southern District of Mississippi applied *Meyer* when reaching its decision in *Term Limits Leadership Council*, 984 F.Supp. at 470. The court overturned the requirement that petition circulators for Mississippi ballot initiatives must be "qualified electors," a definition which included only persons registered to vote in Mississippi. *Term Limits Leadership Council*, 984 F.Supp. at 475.[11] Tracking the analysis in *Meyer*, the court applied strict scrutiny and concluded that the State of Mississippi had "not even remotely approached demonstrating a compelling state interest...." *Id.* at 473. Although the statute in question required a petition circulator to be a Mississippi resident and a registered voter, the State focused its arguments on the issue of circulator residency. Most notably, the State argued that the statute protected the integrity of the initiative process because out-of-state circulators were "disinterested" and more likely to engage in fraud. *Id.* at 473–474. The court concluded that the integrity argument was based on mere speculation masquerading as hard evidence. *Id.* at 474.

The Supreme Court recently overturned a similar restriction on the ballot initiative process in *Buckley v. American Constitutional Law Foundation, Inc.*, —— U.S. ——, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). The Court held that a Colorado statute requiring that petition circulators be registered voters of Colorado violated

---

11. The Court also overturned a prohibition on payments to circulators. *Term Limits Leader-*

*ship Council, Inc.*, 984 F.Supp. at 471.

the free speech guarantee of the First Amendment.[12] *See also Bernbeck v. Moore,* 126 F.3d 1114 (8th Cir.1997) (striking down a similar voter registration requirement in the State of Nebraska). The Court highlighted the importance of balancing free speech concerns with the recognition that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Id.* at 640. The Court concluded that the voter registration requirement was not narrowly tailored to a compelling government interest. *Id.* at 644–645.

The Court noted that the Plaintiffs in *Buckley* did not challenge the circulator residency component of the voter registration requirement. *Id.* at 641 n. 3. The Court pointed out that the Court of Appeals for the Tenth Circuit had determined that, when compared to the voter registration requirement, a circulator residency requirement "more precisely achieved" the objective of the State to secure the opportunity to subpoena circulators when questions arise regarding a petition.[13] *Id.* (citing 120 F.3d at 1100). The Court then concluded as follows: "In sum, assuming that a residence requirement would be upheld as a needful integrity-policing measure—a question we . . . have no occasion to decide because the parties have not placed the matter of residence at issue— the added registration requirement is not warranted." *Id.* at 645.

Another recent case directly addresses a circulator residency requirement similar to the one *sub judice,* though the case is not binding on this Court. The Supreme Judicial Court of Maine held last year that the provision of the State Constitution of Maine requiring circulators of initiative petitions to be residents of the state does not violate the First Amendment right to freedom of speech. *Hart v. Secretary of State,* 715 A.2d 165 (Me.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999). The court employed a strict scrutiny analysis of the circulator residency requirement. *Id.* at 167–168 (citing *Meyer v. Grant,* 108 S.Ct. at 1892). The court then concluded that the State had demonstrated "a compelling state interest in preserving the integrity of the law-making process and that the provision is narrowly tailored to serve that interest." *Id.* at 168.

The *Hart* court distinguished the effect of the circulator residency requirement from the restrictions on free speech discussed by the Supreme Court in *Meyer.* The court acknowledged that any restriction potentially limits the number of voices to promote a political message by way of a petition drive, but determined that "it does not follow that requiring circulators to be residents will limit the size of the audience the proponents can reach or will make it less likely that proponents 'will garner the number of signatures necessary to place the matter on the ballot.'" *Id.* (citations omitted). The court pointed out that the petitioners in *Meyer* only had six months to gather the necessary petition signatures whereas the petitioners in the Maine case had three years to gather signatures and did not demonstrate a need to employ nonresidents. *Id.* The court concluded that the circulator residency requirement ensures that "citizens initiatives are brought by citizens of Maine" and "provides the State with jurisdiction over the circulators and makes the circulators easier to locate if there is a question as to the validity of the signatures collected." *Id.*

---

**12.** The Court also overturned Colorado statutes requiring that circulators wear an identification badge and that proponents of an initiative report the names and addresses of all paid circulators and the amount paid to each circulator. *Buckley v. American Constitutional Law Foundation, Inc.,* 119 S.Ct. at 645–648.

**13.** In his concurring opinion, Justice Thomas wrote, "The Tenth Circuit has assumed, and so do I, that the State has a compelling interest in ensuring that all circulators are residents." *Buckley,* 119 S.Ct. at 652.

In summation, an analysis of the case precedence yields no authoritative precedence which can be applied in the present case. The decision of the Supreme Judicial Court of Maine is not binding on this Court, even considering the fact that the Supreme Court of the United States denied certiorari to the case. Moreover, the Supreme Court only refers to circulator residency requirements in passing during its discussion of the voter registration requirements in *Buckley.* It would be overreaching for this Court to conclude from this passing mention in the majority opinion and a brief nod in the concurring opinion that circulator residency requirements are presumptively constitutional. Accordingly, the Court finds that it is necessary to engage in an independent analysis of the constitutionality of the circulator residency requirement in Mississippi.

### 3. Application as to the Circulator Residency Requirement

The Court now turns to its application of case precedence to the circulator residency requirement.

#### a. Level of Scrutiny

■ The Court must first determine the level of scrutiny to apply in its review of the circulator residency requirement. The Court is mindful that the First Amendment of the United States Constitution protects our national "marketplace for the clash of different views and conflicting ideas." [14] *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley,* 454 U.S. 290, 295, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). The United States Court of Appeals for the Eleventh Circuit has held that "heightened First Amendment scrutiny should be applied to certain state regulations or ballot initiatives," but courts have drawn a distinction "between

regulation of the circulation of petitions— which is 'core political speech'—and a state's general initiative regulations...." *Biddulph v. Mortham,* 89 F.3d 1491, 1497 (11th Cir.1996) (upholding Florida regulations requiring that ballot initiatives must focus on a single issue and must not have a misleading title). The *Biddulph* court identified three types of regulations affecting state ballot initiatives which trigger strict scrutiny: (1) regulations which are content-based, (2) regulations which are facially content-neutral but are applied in a manner which discriminates on the basis of content, and (3) regulations which "burden the free exchange of ideas about the objective of an initiative proposal." *Id.* at 1500.

As indicated by the analysis of case precedence hereinabove, courts consistently have held that circulators of petitions for ballot initiatives are engaged in "core political speech." *See Meyer,* 108 S.Ct. at 1886; *Term Limits Leadership Council,* 984 F.Supp. at 470; *Bernbeck,* 126 F.3d at 1114; *Buckley,* 119 S.Ct. at 636; *Hart,* 715 A.2d at 165. They have applied strict scrutiny because restrictions on petition circulators are a burden to the freedom of speech as protected by the First Amendment. The Court finds that the circulator residency requirement in question is no different. It is a restriction on core political speech and is therefore subject to strict scrutiny under the First Amendment.

#### b. Strict Scrutiny Analysis

■ Under strict scrutiny, the State has the burden to demonstrate that the circulator residency requirement is substantially related to a compelling governmental interest and narrowly tailored to achieve that interest. *Burson v. Freeman,* 504 U.S. 191, 112 S.Ct. 1846, 1851, 119 L.Ed.2d 5 (1992). The State argues that the circu-

---

**14.** The Supreme Court has held that the protection of political speech "reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open....'. [T]he ability of the citizenry to make informed choices

... is essential." *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964)).

lator residency requirement is narrowly tailored to achieve two compelling state interests, which are set forth in the amended language of Miss. Const. art 15, § 273(12), and explained in the briefs submitted by the State: (i) "to prevent signature fraud" and (ii) "to maintain the integrity of the initiative process." Defendants' Cross-motion for Summary Judgment, at 4.

The briefs submitted by the State make it clear that the aim of the State is to prevent fraud and thereby protect the integrity of the ballot initiative process.[15] This argument is parallel to the arguments set forth in defense of voter registration requirements by Mississippi in *Term Limits Leadership Council,* by the State of Colorado in *Meyer* and *Buckley,* and by the State of Nebraska in *Bernbeck.* The State argues that "Mississippi has a compelling state interest in seeking to ensure that circulators who violate the initiative law's criminal provisions will be able to be prosecuted in this state. Without at least a minimal tie to the State, such as circulator residency, the criminal provisions ... are hollow and unenforceable." Memorandum Brief of Defendants, at 4. The State also argues that it needs to be able to use its subpoena powers effectively in order to investigate possible fraud in the initiative process. The Court agrees that the State has a compelling interest in enforcing its criminal statutes related to ballot initiatives. The Court must now consider whether the circulator residency requirement is narrowly tailored to achieve that interest. In other words, the Court must closely examine the fit between the means

and the ends of the State, and consider any deleterious effects on free speech.

The Court looks for guidance in the holding of *Meyer,* which identifies two ways that a restriction on the payment of petition circulators affects political expression. This holding was applied in each of the cases involving a requirement that petition circulators must be registered voters. Specifically, the *Meyer* Court held as follows:

> [The restriction on] petition circulators restricts political expression in two ways: First, it **limits the number of voices** who will convey [an initiative sponsor's] message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it **makes it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot,** thus limiting their ability to make the matter the focus of statewide discussion.

*Meyer,* 108 S.Ct. at 1892 (emphasis added).

As to the limit on the number of voices, any restriction on petition circulators obviously has a negative effect on the number of voices available to circulate petitions, but it does not restrict the number of voices available to convey a message. As the State explains, the proponents of a ballot initiative "are still allowed to use out-of-state persons to coordinate Mississippi residents who actually go into the field to obtain signatures, and may use out-of-state persons to educate and train Mississippi residents in the most efficient ways of circulating petitions in order to gather the most signatures." Memorandum Brief of Defendants, at 16.

---

**15.** By way of an "integrity" argument, states in previous cases have argued that restrictions on petition circulators are intended to ensure that initiatives are generated by residents and have sufficient grass roots support to reach the ballot. *See, e.g., Meyer,* 108 S.Ct. at 1894. To the extent that the State implies a similar argument by way of its discussion of federalism concerns, the Court finds that the circulator residency requirement is not narrowly tailored to achieve this interest. The

interest in ensuring grass roots support is adequately protected by the requirement of obtaining a vast number of signatures and strict requirements for validating signatures. *Id.* In *Hart,* the Supreme Judicial Court of Maine determined that "[r]esidence enhances the integrity of the initiative process by ensuring that citizen initiatives are brought by the citizens of Maine." *Hart,* 715 A.2d at 168. This aspect of the holding in *Hart* seems inconsistent with *Meyer.*

As to the ability to get an issue on the ballot, the State argues that the circulator residency requirement does not significantly burden political speech because it is possible for the sponsors of ballot initiatives to gather sufficient petition signatures during the prescribed one-year period without enlisting the assistance of non-residents.[16] The circulator residency requirement is clearly more narrowly tailored than the previous "qualified elector" requirement as to petition circulators. The pool of potential petition circulators is enlarged to include all Mississippi residents, not just those who are registered to vote.[17]

The free speech ruling in *Meyer* has been applied consistently by other courts in cases involving requirements that circulators must be registered voters. The argument which Mississippi sets forth to distinguish its circulator residency requirement from those cases is that the State needs to ensure jurisdiction over circulators, and its circulator residency requirement is more narrowly tailored to achieve that goal than a voter registration requirement.

As Plaintiffs note, the State safeguards the ballot initiative process by way of a stringent signature requirement and a "warning" notice at the top of each petition to signal signatories that they can be punished by fine or imprisonment for signing a name other than their own or signing more than once. Miss. Const. art. 15, § 273(3); Miss.Code Ann. § 23–17–19. Previous cases have found such devising for preventing fraud to be "adequate to the task of minimizing the risk of improper conduct in the circulation of a petition."

*Meyer*, 108 S.Ct. at 1895. In striking down the Nebraska voter registration requirement in *Bernbeck*, the court noted that "in no other situation does Nebraska law prohibit or oppose electoral measures from hiring or recruiting non-registered voters to champion their cause, including hiring non-registered lobbyists, non-registered campaign workers or campaign managers, or non-registered persons to run a telephone bank opposing various initiatives." *Bernbeck*, 126 F.3d at 1117. Clearly non-resident persons involved in political efforts within a state are subject to a host of election laws.

The Court must determine whether the circulator residency requirement is indeed sufficiently narrowly tailored to overcome any resulting burden on free speech. The criminal provisions which regulate the ballot initiative process in Mississippi include the following:

- a circulator may not intentionally mislead another person as to the substance or effect of a petition so as to acquire a signature, Miss.Code Ann. § 23–17–57(5);

- a person may not interfere with the right to vote on an initiative by way of violence, threats, intimidation or other means, § 23–17–59; and

- a person may not offer consideration to induce a voter to sign or not sign a petition or vote for or against an initiative, § 23–17–57(2).

Violators of these misdemeanors may be imprisoned for up to one year and/or fined up to $1,000. Miss.Code Ann. § 23–17–61. Commenting on the enforcement of these criminal statutes, the State argues:

circulators are required to indicate their residence. *See McLaughlin v. City of Canton, Miss.*, 947 F.Supp. 954, 962–63 (S.D.Miss. 1995). The record before the Court does not indicate to a certainty whether the Term Limits Initiative would have reached the ballot if the sponsor had not engaged non-resident circulators following the ruling in *Term Limits Leadership Council*.

16. The *Hart* court distinguished the three year limitation period which petitioners in Maine enjoy when circulating petitions from the six month period discussed in *Meyer*. *Hart*, 715 A.2d at 168. In Mississippi, the period is limited to one year, a time period which is longer than the period discussed in *Meyer* but not as long as the period discussed in *Hart*.

17. Although there is not a definite rule to determine residency in Mississippi, petition

these safeguards are meaningless unless the courts of Mississippi have personal jurisdiction over all violators, not just Mississippi residents. If an out-of-state circulator violates any of the statutory safeguards and leaves the State of Mississippi thereafter, the drawn-out, expensive extradition process necessary to bring the violators back from foreign states for prosecution of a misdemeanor violation gives the violator virtual immunity.

*Id.* at 20.

Plaintiffs point out that the State has demonstrated no evidence that non-resident circulators are more likely to engage in fraud than residents. The State counters that it is unable to present evidence of improprieties associated with ballot initiatives because there is not an extensive history of initiatives in Mississippi, and it argues that the risk of campaign fraud by non-residents is a threat to the ballot initiative process.

The Court finds that the State demonstrated that the circulator residency requirement does not unnecessarily burden free speech and that it is narrowly tailored to achieve the compelling interest of the State in policing the ballot initiative process. As the Supreme Court stated in *Buckley,* a circulator residency requirement is a "needful integrity-policing measure" which achieves the goal of policing the ballot initiative process more precisely than a voter registration requirement. *Buckley,* 119 S.Ct. at 645. Accordingly, the Court finds that the circulator residency requirement imposed by way of the amendment to Miss. Const. art. 15, § 273(12) is constitutional because it is narrowly tailored to the aim of preventing campaign fraud.

**B. Retroactivity Provision**

■ The Court now turns to the retroactivity provision, which provides that the circulator residency requirement "shall be applicable to all initiative measures that have not been placed on the ballot at the time this proposed amendment is ratified by the electorate." Miss. Const. art. 15, § 273(12). The Secretary of State confirmed on June 9, 1998, that the number of petition signatures for the term limits initiative exceeds the number required by § 273 of the Mississippi Constitution. In accordance with Miss.Code Ann. § 23–17–23 (1972), the Secretary of State accepted and filed the Initiative and presented it to the Legislature as "Initiative No. 9" during the 1999 legislative session. The sponsors of the Term Limits Initiative gathered signatures by way of registered voters until the ruling of the court in *Term Limits Leadership,* which overturned the voter registration requirement. The circulator residency requirement is the only hindrance to prevent the Initiative from going before the people of Mississippi.

Plaintiffs argue that the amendment violates the due process clause because it is not rationally related to a legitimate purpose. *General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). Plaintiffs further argue that amendment violates principles of the separation of powers because they had a right to use non-resident circulators following the decision of the court in *Term Limits Leadership Council. Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Additionally, Plaintiffs argue that the retroactivity violates the *ex post facto* clauses of the U.S. Constitution because they are being "punished" by the legislature for promoting term limits.[18]

The Court finds that the retroactivity provision is invalid on other grounds. Although the State disputes the arguments of Plaintiffs regarding the political motivations of the provision, it is evident that

---

18. If the Court had found that the circulator residency requirement is unconstitutional, the entire amendment to § 273(12) would be invalid because the language of the entire amendment all depends on the presence of the circulator residency requirement.

the provision targets the Term Limits Initiative because it is the only initiative affected by the provision. This amounts to content-based discrimination against a particular political viewpoint, even though the circulator residency requirement itself is facially content-neutral. Moreover, there is no evidence that the Term Limits Initiative achieved sufficient signatures by way of fraud, which is the basis for the restriction on speech imposed by the circulator residency requirement. Therefore, the retroactivity provision is invalid and the State is enjoined from applying the provision to the Term Limits Initiative. As a result, the Term Limits Initiative shall appear on the statewide ballot in Mississippi in November of 1999.[19]

## IV. CONCLUSION

The Court concludes that circulator residency requirement under Section 273(12) of the Constitution of the State of Mississippi, as adopted by the Legislature and later by the voters of Mississippi on November 3, 1998, is valid under the First Amendment of the United States Constitution. The Court further concludes that the retroactivity provision of § 273(12) is invalid. The circulator residency requirement cannot be applied retroactively to the Term Limits Initiative identified by the Secretary of State of Mississippi as Initiative No. 9. Accordingly, the Term Limits Initiative shall appear on the statewide ballot of the State of Mississippi for consideration by voters in November of 1999.

For the reasons set forth in this Opinion:

IT IS THEREFORE ORDERED that the Motion of Plaintiffs for Summary Judgment [4] is granted as to the retroactivity provision and is otherwise denied.

IT IS FURTHER ORDERED that the Cross–Motion of Defendants for Summary Judgment [24] is hereby granted as to the

**19.** The Court makes no comment as to the Term Limits Initiative itself. That judgment

circulator residency requirement and is otherwise denied.

This cause of action is hereby dismissed with prejudice. A Final Judgment consistent with this Opinion and Order will be entered this day.

SO ORDERED.

is left to the people of Mississippi.