1998 ME 189

**Stephanie HART and Mainers for Medical Rights**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued July 20, 1998.

Decided July 28, 1998.

---

**166**

Christopher B. McLaughlin (orally), James T. Kilbreth, William C. Knowles, Verrill & Dana, L.L.P., Portland, for plaintiffs.

Andrew Ketterer, Attorney General, Andrew Hagler (orally), Phyllis Gardiner, Asst. Attys. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1] Stephanie Hart and Mainers for Medical Rights (the proponents) challenge the constitutionality of a provision of the Maine Constitution. They appeal from a judgment entered in the Superior Court (Kennebec County, *Kravchuk, C.J.*) affirming the decisions of the Secretary of State rejecting a direct initiative petition. On appeal, they argue that the Secretary of State, by invalidating signatures on the basis that the circulators failed to comply with the constitutional requirements of residency and voter registration, violated their right to free speech protected by the first and fourteenth amendments of the United States Constitution. Because the number of signatures invalidated on the basis of the circulators' residence alone would prevent the initiative from being placed on the November 1998 ballot,

we affirm the judgment without ruling on the voter registration requirement.

[¶ 2] The relevant facts may be briefly summarized as follows: On October 24, 1997, Stephanie Hart applied for approval of a direct initiative petition entitled "An Act to Permit the Medical Use of Marijuana." The Secretary of State approved the form of the petition for circulation on November 21, 1997, and the proponents had three years to circulate and gather the 51,131 signatures (10% of votes cast in last gubernatorial election) required to place the initiative on the ballot. *See* 21-A M.R.S.A. § 903-A(1) (Supp. 1997). The proponents submitted petitions with a combined total of 68,330 signatures. The Secretary of State reviewed the petitions and invalidated a total of 22,507 signatures, leaving the proponents with 5,308 signatures less than the number required.

[¶ 3] The proponents filed a complaint in the Superior Court seeking a review of the Secretary of State's decision pursuant to 21-A M.R.S.A. § 905 (1993 & Supp.1997) and M.R.Civ.P. 80C. They challenged the Secretary of State's action in invalidating 1,033 signatures because the circulators were not residents of the State of Maine and 4,347 signatures because the circulators did not meet voter registration requirements.

[¶ 4] Without the benefit of the guidance provided by our recent decision in *Palesky v. Secretary of State*, 1998 ME 103, 711 A.2d 129, the court held two evidentiary hearings in April of 1998. After our decision in *Palesky*, the court found the challenged provisions constitutional and affirmed the Secretary of State's determination concerning the 4,347 signatures collected by unregistered voters. With respect to the 1,033 signatures collected by alleged nonresident circulators, the court vacated and remanded to the Secretary of State for further factual findings.

[¶ 5] After remand, the Secretary of State issued an amended determination reducing the number of signatures invalidated on the basis of the circulators' residence from 1,033 to 347. The Superior Court affirmed and the proponents, still short by a total of 4,622 signatures, appealed. Because the signatures invalidated on the basis of the circu-

lators' residence leaves proponents short of the required minimum, we address only that issue.

[¶ 6] Proponents argue that Article IV, pt. 3, § 20 of the Maine Constitution (Supp. 1997) requiring circulators to be residents violates their fundamental rights to freedom of speech, freedom of expression and freedom of association afforded by the first and fourteenth amendments to the United States Constitution.[1] The Secretary of State argues that the requirement represents reasonable regulation of the electoral process. We agree.

[¶ 7] The direct initiative process, the exercise of the legislative power by the electors, is authorized by the Maine Constitution in the following terms: "The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by *written petition* addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State...." Me. Const. art. IV, pt. 3, § 18 (Supp.1997) (emphasis added). "Written petition" is defined as:

> one or more petitions written or printed, or partly written and partly printed, with the original signatures of the petitioners attached, *verified as to the authenticity of the signatures by the oath of the circulator that all of the signatures to the petition were made in the presence of the circulator and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be,* and accompanied by the certificate of the official authorized by law to maintain the voting list of the city, town or plantation in which the petitioners reside that their names appear on the voting list of the city, town or plantation of the official as qualified to vote for Governor.

Me. Const. art. IV, pt. 3, § 20 (Supp.1997) (emphasis added). "Circulator" is defined as "a person who solicits signatures for written petitions, and who must be a *resident* of this State and whose name must appear on the voting list of the city, town or plantation of the circulator's residence as qualified to vote for Governor." Me. Const. art. IV, pt. 3, § 20 (Supp.1997) (emphasis added).

[¶ 8] The proponents rely heavily on *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) and *American Const. Law Found., Inc. v. Meyer,* 120 F.3d 1092 (10th Cir.1997), *cert. granted sub nom. Buckley v. American Const. Law Found., Inc.,* — U.S. ——, 118 S.Ct. 1033, 140 L.Ed.2d 100 (Feb. 23, 1998), *and cert. denied,* — U.S. ——, 118 S.Ct. 1045, 140 L.Ed.2d 110 (Feb. 23, 1998). In *Meyer v. Grant,* the United States Supreme Court declared unconstitutional a provision in Colorado's citizen initiative statute making it a criminal offense to pay circulators. 486 U.S. at 428, 108 S.Ct. 1886. The Colorado statute also required circulators to be registered voters, but the constitutionality of that provision was not before the Court and therefore was not addressed. In *American Const. Law Found., Inc. v. Meyer,* the 10th Circuit, following the United States Supreme Court's analysis, found, *inter alia,* that the Colorado statute requiring circulators to be registered voters was unconstitutional. Although this issue is presently before the United States Supreme Court, it has not yet been decided.

[¶ 9] The proponents argue that, although neither *Meyer v. Grant* nor *American Const.* is controlling, the same strict scrutiny applies and the Secretary of State has not demonstrated a compelling state interest to justify the requirement of residence. We have acknowledged that, in general, "[t]he initiative petition process involves political discourse that is protected by the first amendment of the federal con-

---

1. The first amendment provides in part:

   > Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

   U.S. Const. amend. I.

   The fourteenth amendment provides in part:

   > No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

   U.S. Const. amend. XIV, § 1.

stitution." *Wyman v. Secretary of State,* 625 A.2d 307, 311 (Me.1993) (citing *Meyer v. Grant,* 486 U.S. 414, 421, 108 S.Ct. 1886, 1891, 100 L.Ed.2d 425 (1988)). Specifically, "[t]he circulation of an initiative petition of necessity involves both the expression of a desire of political change and a discussion of the merits of the proposed change.... Thus the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id.* (quoting *Meyer v. Grant,* 486 U.S. at 421–22, 108 S.Ct. 1886). "Although the right to invoke an initiative is a state-created right, it does not follow that the state is free to impose limitations on that right without satisfying the dictates of the first amendment." *Id.* (citing *Meyer v. Grant,* 486 U.S. at 425, 108 S.Ct. 1886). We find, however, that the requirement does not impose the same burden on political expression; and, further, that the State has demonstrated a compelling state interest in preserving the integrity of the law-making process and that the provision is narrowly tailored to serve that interest.

[¶ 10]   Contrary to the proponents' argument, the restriction in *Meyer* is distinguishable from the restriction in this case. *Meyer* involved a state statute making paid circulation a criminal offense. Thus, the proponents were forced to rely on volunteer circulators and were prohibited from making any contribution to their expenses. The Supreme Court found that the proponents' political expression was restricted in two ways:

> First, it limits the number of voices who will convey [proponents'] message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that [proponents] will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion.

*Meyer,* 486 U.S. at 422–23, 108 S.Ct. 1886 (footnotes omitted).

[¶ 11]   In this case, the requirement is that a circulator be a Maine resident. Although technically any restriction limits the "number of voices who will convey the [proponents'] message," *Meyer,* 486 U.S. at 422, 108 S.Ct. 1886, it does not follow that requiring circulators to be residents will limit the size of the audience the proponents can reach or will make it less likely that proponents "will garner the number of signatures necessary to place the matter on the ballot." *Meyer,* 486 U.S. at 423, 108 S.Ct. 1886.

[¶ 12]   In *Meyer,* the petitioners had only six months to gather the necessary signatures and they demonstrated a need to pay circulators in order to obtain the necessary signatures within the allotted time. Here, the petitioners had three years to gather the necessary signatures (21–A M.R.S.A. § 903–A (Supp.1997)) and failed to demonstrate any necessity for employing nonresidents in circulating the petitions.

[¶ 13]   We find persuasive the State's justification for the residency requirement in the citizens' law-making process. Residence enhances the integrity of the initiative process by ensuring that citizens initiatives are brought by citizens of Maine. Because the circulators are the persons who verify that the signature and residence of petitioners are accurate, the residency requirement provides the State with jurisdiction over the circulators and makes the circulators easier to locate if there is a question as to the validity of the signatures collected. Thus, any interference with proponents' right to unfettered political expression is justified by the State's compelling state interest in protecting the integrity of the initiative process, and the residency requirement set forth in the Maine Constitution is narrowly tailored to serve that interest.

The entry is:

Judgment affirmed.