Dave **CHANDLER**, Daniel Hayes, Cheryl St. John, and Robert G. Prokop, Plaintiffs,

v.

The **CITY OF ARVADA, COLORADO**, and Christine Koch, individually and as City Clerk for the City of Arvada, Defendants.

No. 00–CV–342.

United States District Court, D. Colorado.

Feb. 8, 2001.

John A. Sbarbaro, Neil D. O'Toole, Atty., Neil D. O'Toole, Law Offices of Neil O'Toole, PC, Denver, CO, for Plaintiffs.

William James Barber, City Attorney's Office, Arvada, CO, Josh Adam Marks, Hall & Evans, Edward T. Ramey, Blain David Myhre, Mark Gary Grueskin, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is a civil rights case. Plaintiffs allege that Arvada City Ordinance No. 3590 deprives them of their right to freedom of speech secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C.A. § 1983 (West 1994 & Supp.2000). This matter is before the court on: (1) Plaintiffs' "Motion for Summary Judgment for Declaratory and Injunctive Relief" filed August 30, 2000; and (2) "Defendants' Motion for Summary Judgment" filed September 1, 2000. Jurisdiction is based on 42 U.S.C.A. § 1983.

## FACTS

### 1. General Background

Plaintiff David Chandler resides in Arvada, Colorado, and is a citizen and qualified elector of the City of Arvada. (Compl. for Declaratory and Injunctive Relief Under 42 U.S.C. § 1983 ¶1 [filed Feb. 15, 2000] [hereinafter "Compl."]; *admitted at* Defs.' Answer ¶1 [filed April 6, 2000] [hereinafter "Answer"].) David Chandler has been a petition circulator and a proponent of the "CARE Petition" to protect public parks from road development, and he intends to continue participating in petition circulations within Arvada in the future. (*Id.* ¶1; *denied at* Answer ¶1.)[1] Plaintiff Daniel Hayes resides in unincorporated Jefferson County, Colorado, and actively supports the limitation of commercial growth in Arvada. (*Id.* ¶2; *denied at* Answer ¶2.) Daniel Hayes is a property owner and manager of property adjacent to Arvada, but is not qualified to vote in the City of Arvada. (*Id.* ¶2; *denied at* Answer ¶2.) Plaintiff Cheryl St. John resides in Arvada, Colorado, and is a registered elector, homeowner, and tax payer in the City of Arvada. (*Id.* ¶3; *denied at* Answer ¶3.) Plaintiff Robert Prokop resides in Arvada, Colorado, and is a qualified registered elector in Arvada. (*Id.* ¶4; *denied at* Answer ¶4.)

---

1. Defendants deny this fact because they are without sufficient information or knowledge to form a belief as to whether David Chandler has circulated petitions, supported the "CARE petition," or intends to participate in petitions in the future. Nothing in the record suggests that David Chandler did not circulate petitions, support the "CARE petition," or will not participate in future petitions in Arvada. In any event, defendants have not made any legal argument (such as standing) which make plaintiffs' status a material issue of fact, and I will assume the truth of plaintiffs' representations for purposes of this order only.

Defendant City of Arvada is a home-rule municipality under Colorado law. (Br. in Supp. of Defs.' Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Sept. 1, 2000] [hereinafter "Defs.' Br."]; *admitted at* Pls.' Resp. to Defs.' Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed Sept. 25, 2000] [hereinafter "Pls.' Resp."].) The City of Arvada has adopted the "Uniform Election Code of 1992" in lieu of the Colorado Municipal Election Code of 1965. (Pls.' Resp., Statement of Additional Relevant Statutory Authority Supporting Denial of Summ. J. ¶ 1; *admitted at* Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., Resp. Concerning Pls.' Additional Facts ¶ 1 [filed Oct. 19, 2000] [hereinafter "Defs. Reply"].) Defendant Christine Koch is the City Clerk for Arvada. (*Id.* ¶ 6; *admitted at* Answer ¶ 6.)

On August 30, 1999, following a public hearing, the City Council for the City of Arvada ("Arvada City Council") passed Resolution No. 99–187 which placed "Issue 2B—Arvada Residency Rule" on the November 2, 1999, election ballot. (Defs.' Br., Statement of Undisputed Material Facts ¶¶ 2–3; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 2–3.) "Issue 2B—Arvada Residency Rule" placed into question whether the City of Arvada should require circulators of initiative, referendum, or recall petitions to be residents of Arvada and qualified to vote in Arvada elections. (Pls.' Br. in Supp. of Summ. J. for Declaratory and Injunctive Relief, Ex. B [RESOLUTION No. R 99–187] [filed Sept. 12, 2000] [hereinafter "Pls.' Br."].)

On November 2, 1999, eighty-eight and one-half percent of the voters participating in the election voted in favor of requiring circulators of initiative, referendum, or recall petitions to be residents of the City of Arvada. (Defs.' Br., Statement of Undisputed Material Facts ¶ 4; *admitted at* Pls.'

Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.) On January 10, 2000, the Arvada City Council enacted Ordinance No. 3590 to change the petition circulation provisions of the Arvada City Code to conform with the passage of "Issue 2B—Arvada Residency Rule." (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)

### 2. *Resolution No. 99–187*

In Resolution No. 99–187, the Arvada City Council published several reasons in support of placing "Issue 2B—Arvada Residency Rule" on the November 2, 1999, election ballot. (Pls.' Br., Ex. B [RESOLUTION No. R 99–187].) According to Resolution No. 99–187, the Arvada City Council found that, in 1998, eighty-two percent of the individuals who signed a citizen-initiated charter amendment petition were circulators who lived outside the City of Arvada. (*Id.*, Ex. B [RESOLUTION No. R 99–187].) Resolution No. 99–187 also reflects the City Clerk of Arvada's estimates that a special mail ballot election costs $100,000. (*Id.*, Ex. B [RESOLUTION No. R 99–187].) In the resolution, the Arvada City Council also predicted that, if the city council were to lower the threshold requirement for signatures, as proposed by ballot question 200, the frequency of special elections would dramatically increase in Arvada. (*Id.*, Ex. B [RESOLUTION No. R 99–187].) Accordingly, the Arvada City Council found it to be "in the best interest of the citizens of Arvada to require circulators of initiative, referendum or recall petitions to be residents of Arvada and qualified to vote in Arvada elections." (Pls.' Br., Statement of Undisputed Material Facts ¶ 2; *admitted at* Defs.' Resp. to Pls.' Mot. and Br. for Summ. J. for Declaratory and Injunctive Relief, Resp. to Statement of

Undisputed Material Facts ¶ 2 [filed Oct. 2, 2000] [hereinafter "Defs.' Resp."].)

### 3. Ordinance No. 3590

The Arvada City Council states that it enacted Ordinance No. 3590 to "protect the integrity and reliability of the petition gathering process by imposing a requirement that circulators be Arvada residents." (Defs.' Br., Statement of Undisputed Material Facts ¶ 6; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.) Ordinance No. 3590 amended the definition of "circulator" in the Arvada City Code to read as follows:

Circulator means a person who maintains their principal or primary home or place of abode in Arvada as determined by the rules set forth in Section 1–2–102 C.R.S., as amended, who circulates a petition in an attempt to obtain signatures from qualified registered electors.

(*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.) In addition, Ordinance No. 3590 amended the petition requirements of the Arvada City Code to read as follows:

Any petition circulated within the city shall be circulated by an Arvada resident and shall be signed by registered electors. Each registered elector shall sign his or her own signature, after which he or she shall print his or her name, place of residence, including home or apartment number, street address, city, and the date of signing the petition. Signatures which do not contain all of the information required by this subsection shall be considered invalid. To each petition shall be attached a notarized affidavit of the circulator, stating the following:

(1) The circulator's printed name.

(2) The Arvada address of the circulator. The affidavit shall affirmatively state that the circulator is a resident of the City of Arvada. Further the circulator shall provide evidence verifying such residency in a form which is acceptable to the city clerk.

(3) The circulator actually circulated the petition.

(4) Each signature on the petition was affixed in the circulator's presence.

(5) To the best of the circulator's knowledge and belief, each person signing the petition was at the time of signing a registered elector.

(6) The date the circulator signed the affidavit.

(7) The circulator has not and will not in the future pay directly or indirectly any money or other thing of value to any signer for the purpose of inducing or causing such signer to affix a signature to the petition.

(8) To the best of the circulator's knowledge and belief, no other person has paid or will pay directly or indirectly any money or thing of value to any signer for the purpose of inducing or causing such signer to affix a signature to the petition.

(9) The circulator accurately represented the text of the ordinance to the signer.

(*Id.*, Statement of Undisputed Material Facts ¶ 8; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)

### 4. Petition Protest Hearings

The City Clerk for the City of Arvada is responsible for overseeing all municipal elections. (*Id.*, Statement of Undisputed

Material Facts ¶ 10; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.) The Arvada City Clerk must also determine the sufficiency of all initiative, referendum or recall petitions, including whether sufficient valid signatures have been submitted. (*Id.*, Statement of Undisputed Material Facts ¶¶ 10–11; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 10–11.) In the event that a citizen of Arvada files a protest concerning the sufficiency of an initiative, referendum, or recall petition, the Arvada City Clerk is required to conduct a protest hearing within twenty days of the protest to determine the sufficiency of the petitions. (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.) At the protest hearing, the Arvada City Clerk acts as the hearing officer or designates someone else to act as the hearing officer. (*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.) The hearing officer has the authority to subpoena witnesses. (*Id.*, Statement of Undisputed Material Facts ¶ 15; *admitted in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.)[2]

### 5. Procedural History

On February 15, 2000, plaintiffs filed a one-count complaint against defendants for alleged violations of the First and Fourteenth Amendments to the United States Constitution.[3] (Compl. ¶¶ 8–15.) Plaintiffs allege that Ordinance No. 3590 of the Arvada City Code is unconstitutional because it prohibits nonresidents of Arvada from circulating initiative, referendum or recall petitions in Arvada. (*Id.*) Plaintiffs seek a declaration that Arvada City Ordinance No. 3590 is unconstitutional, and an injunction prohibiting defendants from enforcing Ordinance No. 3590. (*Id.* at 4–5.)

On August 30, 2000, plaintiffs moved for summary judgment. (Mot. for Summ J. for Declaratory and Injunctive Relief [filed Aug. 30, 2000].) Plaintiffs contend that Arvada City Ordinance No. 3590 violates the First and Fourteenth Amendments to the United States Constitution because the City of Arvada does not have a compelling governmental interest in prohibiting nonresidents of Arvada from circulating initiative, referendum, and recall petitions in Arvada. (Pls.' Br. at 4–9.) Plaintiffs also contend that, even if the City of Arvada has a compelling governmental interest in prohibiting nonresidents of Arvada from circulating initiative, referendum, and recall petitions in Arvada, Ordinance No. 3590 is not narrowly tailored to suit this goal. (Pls.' Br. at 4–9.)

On September 1, 2000, defendants moved for summary judgment. (Defs.' Mot. for Summ. J. [filed Sept. 1, 2000].) Defendants contend that Ordinance No. 3590 is narrowly tailored to prevent fraud, malfeasance, and corruption in municipal elections within the City of Arvada. (Defs.' Br. at 6–20.) Defendants contend

---

2.  Although it is undisputed that the Arvada City Clerk has the power to subpoena witnesses, the parties disagree as to the extent of the Arvada City Clerk's subpoena power. (Defs.' Br., Statement of Undisputed Material Facts ¶ 15; *denied in relevant part at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.) The breadth of the Arvada City Clerk's subpoena power is a crucial determination in resolving this case. The par-

ties' dispute, however, is one of law, not of fact.

3.  On April 27, 2000, the parties submitted a stipulated motion to dismiss Christine Koch, in her official and individual capacity, from this case. (Stipulated Mot. for Dismissal of Def. Christine Koch ¶¶ 1–2 [filed April 27, 2000].) Plaintiffs continue to bring this suit against the City of Arvada.

that prohibiting nonresidents from circulating initiative, referendum, and recall petitions in Arvada is constitutional because the Arvada City Clerk has no authority to subpoena nonresidents during petition protest hearings, and, therefore, the City of Arvada cannot adequately regulate nonresidents so as to prevent them from improperly influencing municipal elections in Arvada. (Defs. Br. at 6–20.)

## ANALYSIS

### 1. Legal Standard

Under rule 56(c), the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554). The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir.1990] ).

### 2. Section 1983 Claim

Plaintiffs bring this suit under 42 U.S.C.A. § 1983. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured ...

42 U.S.C.A. § 1983. Plaintiffs allege that Arvada City Ordinance No. 3590 deprives them of their right to freedom of speech secured by the First and Fourteenth Amendments to the United States Constitution. (Compl.¶¶ 13–14.)

#### a. First and Fourteenth Amendments

The First Amendment provides that Congress "shall make no law ... abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST amend. I. The Fourteenth Amendment makes that prohibition applicable to the State of Colorado. *Meyer v. Grant*, 486 U.S. 414, 420, 108 S.Ct. 1886, 1891, 100 L.Ed.2d 425 (1988). "The freedom of speech and of the press, which are secured by the First Amendment against abridgment by the United States, are among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a State." *Thornhill v. Alabama*, 310 U.S. 88, 95, 60 S.Ct. 736, 740, 84 L.Ed. 1093 (1940).

■ The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by. the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957). The freedom of speech guaranteed by the Constitution embraces the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. *Grant*, 486 U.S. at 420, 108 S.Ct. at 1891. Associating for the purpose of placing an issue on the ballot is one of the actions protected by the First Amendment; indeed, the circulation of petitions for ballot access "involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Id.* at 422, 108 S.Ct. at 1892. Restrictions on ballot access, therefore, can violate several constitutionally protected interests. *See Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 983, 59 L.Ed.2d 230 (1979); *Krislov v. Rednour*, 226 F.3d 851, 859 (7th Cir.2000).

Like most rights, however, plaintiffs' first amendment rights are not absolute. *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191, 119 S.Ct. 636, 642, 142 L.Ed.2d 599 (1999); *Buckley v. Valeo*, 424 U.S. 1, 45, 96 S.Ct. 612, 647, 46 L.Ed.2d 659 (1976); *American Constitutional Law Foundation, Inc. v. Meyer*, 120 F.3d 1092, 1097 (10th Cir. 1997); *Krislov*, 226 F.3d at 859. Common sense, as well as constitutional law, compels the conclusion that the government must play an active role in structuring elections. *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992). "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 1369, 137

L.Ed.2d 589 (1997). Because elections must be regulated to remain free from fraud and coercion, some latitude is given to regulations designed to serve these purposes. *Krislov*, 226 F.3d at 859; *Meyer*, 120 F.3d at 1097.

■ In assessing whether a state or municipal election law impermissibly burdens first and fourteenth amendment rights, the court must weigh the character and magnitude of the burden the law imposes on those rights against the interests the state or municipality contends justify that burden. *Timmons*, 520 U.S. at 358, 117 S.Ct. at 1370; *Burdick*, 504 U.S. at 434, 112 S.Ct. at 2063–64; *Krislov*, 226 F.3d at 859. Regulations imposing severe burdens must be narrowly tailored and advance a compelling state interest. *Id.*, 520 U.S. at 358, 117 S.Ct. at 1370; *Clark v. City of Aurora*, 782 P.2d 771 (Colo.1989) (holding that municipal legislation is subject to the same review as state legislation). Lesser burdens, however, trigger less exacting review, and a state's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. *Id.* Thus, the rigorousness of my inquiry depends upon the extent to which the challenged ordinance burdens plaintiffs' first and fourteenth amendment rights. *Krislov*, 226 F.3d at 859; *Meyer*, 120 F.3d at 1097.

### b. Nature and Extent of the Burden

■ Courts that have dealt with laws similar to the ordinance at issue in this case have unanimously found that these laws place significant burdens on first and fourteenth amendment rights such that strict scrutiny is required. *See, e.g., Molinari v. Powers*, 82 F.Supp.2d 57 (E.D.N.Y. 2000) (holding that a requirement that a resident witness each signature is subject to strict scrutiny); *Kean v. Clark*, 56 F.Supp.2d 719 (S.D.Miss.1999) (holding

that residency requirement for circulators is subject to strict scrutiny); *KZPZ Broadcasting, Inc., v. Black Canyon City Concerned Citizens*, 199 Ariz. 30, 13 P.3d 772 (2000) (holding that residency requirement is subject to strict scrutiny); *Browne v. Russell*, 27 Cal.App.4th 1116, 33 Cal. Rptr.2d 29 (1994) (holding that residency requirement for circulators is subject to strict scrutiny); *Hart v. Secretary of State*, 715 A.2d 165 (Me.1998) (holding that residency requirement for circulators is subject to strict scrutiny). "Political association is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect." *Krislov*, 226 F.3d at 860; *McCloud v. Testa*, 97 F.3d 1536, 1552 (6th Cir.1996). First amendment protection for such association and interaction is "at its zenith." *Buckley*, 525 U.S. at 187, 119 S.Ct. at 640; *Grant*, 486 U.S. at 425, 108 S.Ct. at 1894.

Arvada City Ordinance No. 3590 places a substantial and severe burden on political speech. Prior to the enactment of Ordinance No. 3590, every resident of Colorado was eligible to circulate petitions in Arvada. Colo. Const. art. V, § 1(9). Now that Ordinance No. 3590 is in effect, nonresidents of Arvada are no longer allowed to circulate petitions, thereby excluding a large group of persons from participating in core political speech. *Buckley*, 525 U.S. at 185, 119 S.Ct. at 639; *Krislov*, 226 F.3d at 860; *Meyer*, 120 F.3d at 1099. The mandatory exclusion of nonresident circulators drastically limits the number of voices that convey proponents' message, limiting the audience the proponents can reach and making it less likely that proponents will be able to gather the required number of signatures to place a measure on the ballot. *Grant*, 486 U.S. at 422, 108 S.Ct. at 1892; *Meyer*, 120 F.3d at 1099. The ordinance has the inevitable effect of significantly reducing the total quantum of speech on a public issue. *Id.*

at 422, 108 S.Ct. at 1892. Accordingly, I find that Ordinance No. 3590 imposes a severe burden on political speech in Arvada, and, therefore, must be narrowly tailored to protect a compelling municipal interest.

### c. Strict Scrutiny Analysis

■ Laws which place a substantial burden on first amendment rights may still withstand strict scrutiny if they are narrowly tailored to serve a compelling state interest. *Krislov*, 226 F.3d at 862. The question of whether the City of Arvada's asserted interests qualify as compelling is one of law. *Id.* Where the material facts are undisputed, the necessity of the chosen means also involves a question of law. *Id.* The City of Arvada need not use the least restrictive means, as long as its present method does not burden more speech than is necessary to serve its compelling interests. *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 2764, 105 L.Ed.2d 661 (1989). The necessity of Ordinance No. 3590 also depends on whether other means, currently in existence, accomplish the asserted regulatory purpose of Ordinance No. 3590. *Buckley*, 525 U.S. at 191, 119 S.Ct. at 642.

### i. Compelling Interest

■ According to the City of Arvada, the requirement that petition circulators for municipal ballot initiatives be residents of the City of Arvada is necessary to prevent fraud, malfeasance and abuse of its petition process. (Defs.' Br. at 12–20.) It is undisputed and well-supported by precedent that a municipality has a compelling government interest in policing the integrity of its citizen initiative, referenda, and recall petition process. *See Buckley*, 525 U.S. at 191, 119 S.Ct. at 642; *Timmons*, 520 U.S. at 364, 117 S.Ct. at 1372; *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849,

856–57, 31 L.Ed.2d 92 (1972). Accordingly, I find that the City of Arvada has a compelling interest in policing the integrity of its citizen initiative, referenda, and recall petition process.

### ii. Narrowly Tailored

The City of Arvada contends that Ordinance No. 3590 is narrowly tailored to protect the integrity of its citizen initiative, referenda, and recall petition process because the Arvada City Clerk does not have the authority to subpoena nonresidents of Arvada during protest hearings. (Defs.' Br. at 15–16.) Without the authority to subpoena nonresidents during protest hearings, the argument goes, Arvada residents will not be able to successfully challenge the sufficiency of petitions brought by nonresidents. (*Id.*) As a result, the City of Arvada contends that, without the residency requirement embodied in Ordinance No. 3590, it cannot prevent nonresidents from abusing its petition process. (*Id.*)

▌ Plaintiffs respond to the City of Arvada's contentions by noting that several other provisions of the Arvada City Code and the Colorado election laws enable the City of Arvada to subpoena nonresidents suspected of violating provisions of the Arvada City Code relating to the petition process. (Pls.' Resp. at 8–14.) Contrary to the City of Arvada's contention that Ordinance No. 3590 is necessary to enable the city clerk to efficiently and effectively conduct a protest hearing, plaintiffs point to other provisions of the Arvada City Code and the Colorado election laws which already serve this interest. I agree. Because I find that the City of Arvada has several alternative means of enforcing its election laws, I hold that Ordinance No. 3590 is not narrowly tailored to serve a compelling government interest, and is, therefore, unconstitutional.

Section 11–28 of the Arvada City Code states that the hearing officer presiding over a protest hearing shall have the power to issue subpoenas. (Pls.' Resp., Statement of Additional Relevant Statutory Authority Supporting Denial of Summ. J. ¶ 12; *admitted at* Defs.' Reply, Resp. Concerning Pls.' Additional Facts ¶ 12.) Section 11–28 further states that "[u]pon failure of any witness to obey the subpoena, the hearing officer may petition the district court for an order compelling the witness to appear and testify or produce documentary evidence." (*Id.*, Statement of Additional Relevant Statutory Authority Supporting Denial of Summ. J. ¶ 12; *admitted at* Defs.' Reply, Resp. Concerning Pls.' Additional Facts ¶ 12.) Accordingly, contrary to defendants' contentions, the Arvada City Code provides a means for the hearing officer to enforce subpoenas "extraterritorially" through Colorado district courts.[4]

Furthermore, under section 11–3 of the Arvada City Code, any person convicted of violating any section of the Arvada City

---

**4.** Defendants contend that Colorado state law governing the powers and procedures of municipal courts also defines and limits the hearing officer's power to issue subpoenas for nonresidents of Arvada. (Defs.' Br. at 12–15.) Specifically, defendants contend that Colo. Rev.Stat. §§ 13–10–111(4) and 112(2) limit the city clerk's power to subpoena nonresidents. (*Id.*) Contrary to defendants' contention, however, these statutes merely define and limit the powers of municipal judges, municipal court clerks, and municipal courts.

These statutes say nothing about the powers granted to hearing officers conducting protest hearings. On the other hand, section 11–28 of the Arvada City Code speaks directly to this point, and grants hearing officers the right to petition district courts for an order compelling witnesses to comply with a subpoena issued by the hearing officer. Accordingly, I hold that section 11–28 of the Arvada City Code, and not Colorado law, defines the subpoena power granted to the hearing officers.

Code relating to the regulation of the petition process is subject to penalties provided under section 31–10–1504 of the Colorado Revised Statutes. (*Id.,* Statement of Additional Relevant Statutory Authority Supporting Denial of Summ. J. ¶ 4; *admitted at* Defs.' Reply, Resp. Concerning Pls.' Additional Facts ¶ 4.) Furthermore, section 13–10–111(1) of the Colorado Revised Statutes states that any "action or summons brought in municipal court to recover any fine or enforce any penalty or forfeiture under any ordinance shall be filed in the corporate name of the municipality ... by and on behalf of the people of the state of Colorado." Colo.Rev.Stat. § 13–10–111(1) (1999). Accordingly, any violation of the Arvada City Code relating to the regulation of the petition process can be brought in Colorado state court under Colorado law. *See, e.g.,* Colo.Rev.Stat. § 1–13–101, 105–106 (2000). Colorado state courts have the authority to issue subpoenas to individuals who reside in Colorado, but not in Arvada. Accordingly, I find that the City of Arvada is able to police its petition process through the Colorado courts under Colorado law.[5]

I also find that a hearing officer will rarely, if ever, require the testimony of the petition circulator to determine the sufficiency of a petition. Even assuming that a hearing officer's subpoena power does not extend beyond the borders of Arvada, the hearing officer can still subpoena all those individuals who signed the petition because, under section 11–25(a) of the Arvada City Code, only Arvada residents registered to vote in Arvada can sign an initiative, referendum, or recall petition. There is no reason to believe that a protestor could not prove circulator fraud or deficiencies in a challenged peti-

tion using only the testimony of those individuals who signed the challenged petition. Accordingly, the City of Arvada is capable of preserving the integrity of its petition process even without the authority to subpoena nonresident petition circulators.

The insignificance of the circulator's presence during the protest hearing is further established by the provisions of Ordinance No. 3590 itself. Under section 11–25(g) of the ordinance, each petition "shall designate no more than five persons by name and address who are registered electors of Arvada *to represent the signers thereof.*" (Defs.' Br., Ex. F [Ordinance No. 3590] [emphasis added].) Under section 11–27 of the Arvada City Code, once the Arvada City Clerk receives a protest in writing, the city clerk is to mail a copy of such protest to the petition representatives, together with a notice fixing the time for hearing such protest. (*Id.,* Ex. F [Ordinance No. 3590].) Under section 11–28 of the Arvada City Code, the result of a protest hearing "shall be mailed to the petition representatives and protest representatives." (*Id.,* Ex. F [Ordinance No. 3590].) These provisions of Ordinance No. 3590 do not require the city clerk to notify the petition circulator of the protest hearing or the result of the protest hearing. Instead, the city clerk must notify the petition representatives only. This suggests, at the very least, that the circulator often plays a peripheral role in protest hearings.

Defendants rely on three cases to support their contention that Ordinance No. 3590 is constitutional. According to defendants, the Supreme Court in *Buckley v. American Constitutional Law Foundation* created a presumption that residency re-

---

5. It is also worth noting that, under section 11–28(c) of the Arvada City Code, the Jefferson County District Court of Colorado has appellate review over any "finding of the hearing officer as to the sufficiency or insufficiency of any petition ..." (Defs.' Br., Ex. F [Ordinance No. 3590].)

quirements are constitutional. (Defs.' Br. at 11–13.) The Supreme Court in *Buckley*, however, simply did not do this. In fact, the Supreme Court specifically reserved ruling on this issue. *Buckley*, 525 U.S. at 197, 119 S.Ct. at 645 (stating that whether a residence requirement would be upheld as a needful integrity-policing measure is a question that is not at issue). Furthermore, *Buckley* dealt with a Colorado statute, not a municipal ordinance. *Id.* This poses a question significantly different from the one presented in this case. A state is a sovereign entity that governs the conduct of its residents, but has little authority to regulate the conduct of out-of-state residents. On the other hand, there is an overlap of governance between a municipality and the state in which that municipality exists. Such overlapping of municipal and state governments provides municipalities with alternative sources of regulation to enforce local municipal law that do not exist for a sovereign state attempting to enforce its laws on out-of-state residents. Accordingly, it is less likely that a sovereign state could force an out-of-state resident to comply with its local election laws than a municipality could force an out-of-town, but in-state, resident to comply with its local election laws.

Defendants also contend that *Hart*, 715 A.2d at 165, and *Kean*, 56 F.Supp.2d at 719, support their argument that Ordinance No. 3590 is constitutional. (Defs.' Br. at 17–20.) Defendants reliance on these cases, however, is also misplaced. *Hart* and *Kean* also involved constitutional challenges to *state* laws that required petition circulators to be residents of the *state*. *Hart*, 715 A.2d at 166 (holding that article IV of the Maine Constitution, requiring circulators to be residents of Maine, is constitutional); *Kean*, 56 F.Supp.2d at 721 (holding that article XV of the Mississippi constitution, requiring petition circulators to be residents of Mississippi, is constitu-

tional). As discussed above, this question is significantly different from the one presented here.

Both parties failed to discuss a recent case from the Arizona Court of Appeals which held that an Arizona law requiring a petition circulator to be a resident of the political subdivision in which the petition was to be filed was unconstitutional. *See KZPZ Broadcasting, Inc.*, 13 P.3d at 775. The Arizona Court of Appeals held that, because the residency requirement drastically reduced the number of persons eligible to circulate petitions, the statute would be reviewed under the strict scrutiny framework. *Id.* at 777. The court distinguished the facts before it from those in *Hart* and *Kean*, recognizing that the more local the residency restriction, the smaller the pool of available petition circulators. *Id.* Furthermore, the court stated that petition circulators are not responsible for delaying the ballot process or increasing the costs of elections because registered voters of the county sign the petition and place an issue on the ballot, not the circulators. *Id.* at 779. Accordingly, because the law was not narrowly tailored to serve any compelling government interest, the court held it unconstitutional. *Id.* The reasoning employed by the Arizona Court of Appeals, although not binding, is persuasive and reinforces my conclusion that Arvada Ordinance No. 3590 is not narrowly tailored to pass constitutional muster.

In sum, because Arvada Ordinance No. 3590 significantly reduces the total quantum of political speech and association, and does not serve any new regulatory purpose not already accomplished by other provisions of the Arvada City Code and Colorado election laws, I hereby declare Ordinance No. 3590 to be unconstitutional and enjoin defendants from enforcing the residency requirement contained therein.

### 3. Conclusion

Based on the foregoing it is therefore ORDERED as follows:

1. Plaintiffs' motion for summary judgment (# 13) is GRANTED.
2. Defendants' motion for summary judgment (# 15) is DENIED.
3. The parties stipulated motion for dismissal of Defendant Christine Koch (# 11) is GRANTED.
4. Arvada Ordinance No. 3590 is hereby declared to be unconstitutional, and defendants are enjoined from enforcing it.
5. The clerk shall enter final judgment in accordance with this order.