STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-02-005

JEH-CUM-3/13 2002

MAINE TAXPAYERS ACTION NETWORK, ET AL,

Petitioners,

v.

DECISION AND ORDER

DAN A GWADOSKY, SECRETARY OF STATE,
STATE OF MAINE,

Respondent

The petitioners appeal from the decision of the respondent ("Secretary of State") rejecting their direct initiative petition because they failed to collect sufficient signatures to proceed with their proposed referendum measure. M.R. Civ. P. 80C; 21-A M.R.S.A. § 905(2); Me. Const. art. IV, pt. 3, §§ 18, 20.

BACKGROUND

The petitioners circulated direct initiative petitions for legislation entitled, "An Act to Impose Limits on Real and Personal Property Taxes". In October 2001 they submitted the petitions to the Secretary of State with a combined total of 53,795 signatures. On February 4, 2001, the Secretary invalidated 14,506 of those signatures, leaving the petitioners with 2,812 less than the number required. Of the rejected signatures, 3,054 were

collected by a circulator who falsely identified himself as James Henry Powell.

The real Powell was born on July 2, 1950, is a life-long resident of the State of Washington, and has been the victim of identity theft since the early 1990's. The circulator in question has been using Powell's name, birth date and social security number in other states since at least 1994. The circulator came to Maine in June 2000 and used Powell's identity to obtain a driver's license, to apply for employment, to rent living quarters, to register to vote and to sign up to work as a petition circulator. He took the job of circulator to earn "easy money" and registered to vote using Powell's name presumably to appear eligible for that job. He left Maine in January 2001. The true identity of the circulator was never ascertained and, to date, remains unknown.

In this appeal, the petitioners only challenge the Secretary's rejection of the 3,054 signatures collected by the individual posing as Powell. They argue that the Secretary erroneously invalidated the signatures on the basis that circulator was not a Maine resident or registered voter and on the further basis that the circulator was not the person he purported to be.[1]

Because the decision of the Secretary of State may be affirmed on the basis of the circulator's residency requirement alone, the court does not rule on the voter registration requirement.

---

[1]The petitioners admit that there "was significant evidence in the record upon which the Secretary could base his finding that the circulator in question was not, in fact, the James Henry Powell he purported to be." Petitioners' Brief at 5, n.3.

## DISCUSSION

This 80C appeal is brought pursuant to 21-A M.R.S.A. § 905. The decision of the Secretary of State may be reviewed only for abuse of discretion, errors of law, or findings not supported by evidence in the record. *Palesky v. Secretary of State*, 1998 ME 103, ¶ 9, 711 A.2d 129, 132. The court cannot substitute its judgment for that of the Secretary and must uphold his findings of fact if they are supported by substantial evidence in the record. *Aviation Oil Co. v. Dept. of Envtl. Prot.*, 584 A.2d 611, 614 (Me. 1990).

Petition circulating is protected "core political speech". *Hart v. Secretary of State*, 1998 ME 189, ¶ 9, 715 A.2d 165, 168. Having created the right to invoke an initiative, "it does not follow that the state is free to impose limitations on that right without satisfying the dictates of the first amendment." *Id.* However, the State has "a compelling state interest in protecting the integrity of the initiative process and a limitation on that process will be upheld if it is narrowly tailored to serve that interest. *Id.*

The Law Court has determined that the integrity of that process is enhanced by ensuring that the initiatives are brought by citizens of Maine. *Id.* To this end, a circulator plays a crucial role in the process by verifying *under oath* to the authenticity of the signatures on the petition. *Id.*; Me. Const. art. IV, pt. 3, § 20 ("[t]he oath of the circulator must be sworn to in the presence of a person authorized by law to administer oaths").

The initiative process requires that a circulator be a resident of Maine. *Id.* Although the petitioners challenge the constitutionality of this

3

requirement, it has been upheld by the Law Court because it is narrowly tailored to serve the State's compelling interest in providing the State with jurisdiction over the circulator and makes it easier to locate him if there is a question as to the validity of a signature collected. *Hart v. Secretary of State*, 1998 ME 189, ¶¶ 9, 13, 715 A.2d 165, 168.[2]

The Secretary of State is required to conduct an independent review of all direct initiative petitions to determine the validity of the petitions. 21-A M.R.S.A. § 905(1). The Secretary's inquiry must include a determination as to whether a petition circulator is a resident. Me. Const. art IV, pt. 3, § 20. In the performance of this task, the Secretary is not bound by the residency determination of the registrar of voters made pursuant to 21-A M.R.S.A. § 112(1)(A) (Supp. 2002).

The question then becomes whether the Secretary of State applied an acceptable standard and had a sufficient basis for determining the residency of the circulator. "'[R]esidence' generally requires both physical presence and an intention to remain." *Martinez v. Bynum*, 461 U.S. 321 (1983), *citing Inhabitants of Warren v. inhabitants of Thomaston*, 43 Me. 406, 418

---

[2]The court does not agree with the petitioners' suggestion that *Hart* may no longer be good law in light of *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999). In *Buckley*, Colorado's residency requirement for circulators was not challenged and the Supreme Court noted only that, "assuming that a residence requirement would be upheld as a needful integrity-policing measure . . . the added [voter] registration requirement is not warranted." *Buckley*, 525 U.S. at 197.

The Supreme Court did strike down various other restrictions imposed by Colorado on the qualifications of circulators, including a requirement that they must be registered voters. *Id.* However, a recent decision of the Maine District Court suggests that this determination may be limited to the facts in *Buckley*. *See Initiative & Referendum Institute v. Secretary of State*, 1999 WL 33117172 (D. Me. 1999).

(1857).[3] Although not bound by the residency determination of the registrar of voters, the Secretary of State appropriately applied the same standard in this case and considered many of the same factors for determining the circulator's residence. 21-A M.R.S.A. § 112(1) (Supp. 2002) ("[t]he residence of a person is that place where the person has established a fixed and principal home to which the person, whenever temporarily absent, intends to return.").

In the face of this residency requirement, the petitioners appear to argue that, although the real Powell was not a Maine resident, the unknown circulator exhibited indicia of residency -- *albeit* using fraudulent means -- and, therefore, met that constitutional criterion. The court does not agree. There is sufficient record evidence to support the Secretary's determination that the unknown circulator had no intention of staying in Maine and was not a resident. He said that he did not like Maine, hated the climate, referred to Maine people as stupid, had Arizona license plates, indicated that he had only as many personal belongings as he could move in his car so he could relocate at will, and had moved several times within Saco in a short period of time. *See* Record Document ("R.") 3 at 2-4. He never relinquished his North Dakota driver's license. R. 5 at 1-3. He reapplied for

---

[3]Approving a rigorous domicile test as a reasonable standard for determining the residential status of a student, the United States Supreme Court has said:

> In reviewing a claim of in-state status, the issue becomes essentially one of domicile. In general, the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.

*Martinez*, 461 U.S. at 331.

a Tennessee driver's license on May 18, 2001, identifying himself as a "returning resident." R. 6; R. 8. He obtained a Maine driver's license and a voter registration card falsely using Powell's name. Although he signed two leases for a total of 9 months, he broke one lease after a couple of weeks and the other after four months. R. 13 at 2.

The court is also unpersuaded by the petitioners' further argument that the Secretary of State committed an error of law and has no legal authority to reject the signatures on the basis that the circulator was not the person he purported to be. To the contrary, the Secretary's authority is part and parcel of his obligation to conduct an independent review of all direct initiative petitions to determine their validity. Under 21-A M.R.S.A. § 905(1). Of necessity, the identity and residency of a circulator is part of that validation process. If the circulator is not the person he purports to be in his sworn statement on the petition, then he has lied under oath about his own identity and has deprived the Secretary of State of fundamental information critical to the petition validation process. Without knowing who the circulator is or where he resides, the State cannot locate him if there is a question about the validity of any signature on the petition. As a result, the State's compelling interest in protecting the initiative process is seriously compromised.

## DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is:

6

The decision of the Secretary of State rejecting a direct initiative petition for legislation entitled, "An Act to Impose Limits on Real and Personal Property Taxes," is AFFIRMED.

Dated:   March 19, 2002

_____
Justice, Superior Court

Date Filed ___02-07-02___ ___Cumberland___ Docket No. ___AP-02-05___

County

Action ___80C APPEAL___

MAINE TAXPAYERS ACTION NETWORK
ARTHUR McDERMOTT

DAN A. GWADOSKY, SECRETARY OF STATE

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| STEPHEN C. WHITING, ESQ.<br>75 Pearl Street, Suite 207<br>Portland, ME 04101-4101<br>(207) 780-0681 | PHYLLIS GARDINER, AAG<br>6 STATE HOUSE STATION<br>AUGUSTA, MAINE 04333-0006<br>626-8800 |

| Date of Entry | |
|---|---|
| 2002<br>Feb. 7 | Received 02-07-02:<br>Summary Sheet filed. |
| "    " | Plaintiff's Petition for Review with Exhibits A-B filed. |
| Feb. 8 | Received 02-08-02:<br>Plaintiff's Amended Petition for Review filed. |
| Feb. 11 | Received 02-11-02:<br>Letter from Phyllis Gardiner, AAG entering her appearance on behalf of the Respondent, Secretary of State Dan A. Gwadosky filed. |
| Feb 12 | Received 2-12-02:<br>New Summary Sheet filed. |
| Feb. 19 | Received 02-15-02:<br>Parties' Joint Motion for Remand filed. |
| "    " | Parties' Proposed Order filed. |
| Feb. 19 | Received 2-19-02.<br>Order on Joint Motion for Remand filed. (Cole, J.)<br>The parties' Joint Motion to Remand is granted. This case is remanded to the Secretary of State in accordance with the terms of this Order, which are hereby incorporated by reference pursuant to M.R.Civ.P. 79(a).<br>Copies mailed Stephen Whiting, Esq. and Phyllis Gardner, AAG on 2-19-02. |
| Mar. 4 | Received 03-01-02:<br>Agency Record with a Certification and Index filed. |
| " " | On 3-4-02.<br>Briefing scheduled mailed. Petitioner's brief is due by 4-10-02. |
| March 11 | Received 03-08-02:<br>Petitioners' Brief filed. |
| March 18 | Received 03-18-02:<br>Respondent's Brief with attachment filed. |